IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


CHANDLER TODD BARR,

      Plaintiff,

v.                                                                          No.   12-CV-01109-GBW/RHS

CITY OF ALBUQUERQUE,
RAY SCHULTZ, in his official capacity,
LEAH KELLY, in her individual capacity,
JENNIFER JARA, in her individual capacity,
and ANDREA ORTIZ, in her individual capacity,

      Defendants.


**<u>ORDER GRANTING IN PART MOTION FOR RECONSIDERATION</u>**

This matter is before the Court on the Plaintiff Chandler Barr's Motion for

Reconsideration.  *Doc. 133*.  Having reviewed the accompanying briefing (*docs. 141, 147*)

and considered the parties' oral argument (*doc. 165*), and being fully advised, the Court

will GRANT the Motion in part.

I.    B<small>ACKGROUND</small>

On April 8, 2014, the Court granted Defendants' motions for summary judgment

in part, dismissing Plaintiff's § 1983 municipal liability claims and related state law

claims against City of Albuquerque and Defendant Schultz.  *Doc. 126*.  On April 10,

2014, the United States Department of Justice, Civil Rights Division, issued its report in

its ongoing investigation of the Albuquerque Police Department.  *See doc. 133*, Ex. 1.

The report makes several findings that could support municipal liability.  Plaintiff contends that the report constitutes newly discovered evidence that should lead the Court to reconsider and alter its decision to dismiss the claims related to such liability.

## II.  LEGAL STANDARD

Plaintiff's Motion is filed within 28 days of the relevant order and, therefore, will be construed as a motion under Rule 59(e).  *See Tilley v. Fish*, 490 Fed. App'x 968, 969-70 (10th Cir. July 31, 2012).  "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."  *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).  A court has discretion to grant a Rule 59(e) motion to reconsider when it "has misapprehended the facts, a party's position, or the controlling law."  *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (internal quotation marks omitted).  A Rule 59(e) motion for reconsideration "should be granted only to correct manifest errors of law or to present newly discovered evidence."  *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997) (quotation and citation omitted).

III.   ANALYSIS

A.   <u>Admissibility of DOJ report under Rule 803(8)(C)</u>

If the opposing party objects, the Court may not consider, for the purposes of summary judgment, material which "cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56 (c)(2).  Defendants contend that the DOJ report would not be admissible at trial and therefore should not be considered. *Doc. 141* at 3-12.  Specifically, Defendants argue that the report is "premised on hearsay and sometimes hearsay within hearsay…." *Id*. at 3.[1]  The report is undeniably hearsay so its admissibility initially depends upon whether it falls within a hearsay exception.

The Court will, as have the parties, focus on the hearsay exception which permits the admission of public records. *See* FED. R. EVID. 803(8).  Under Rule 803(8)(C), a report is admissible in a civil action if it sets forth "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."  Defendants do not argue that the report was not the result of an investigation made pursuant to lawful authority.  Instead, they focus on establishing that it lacks trustworthiness and should be excluded on that basis.  In determining "trustworthiness" under 803(8)(C), the Tenth Circuit has looked to the nonexclusive list of factors laid out in the Advisory

---

[1] Defendants also state that "it has not been presented in admissible form as it has not been sworn and has not otherwise been shown to be admissible." *Doc. 141* at 3.  However, in this context, these are not separate bases for inadmissibility.  There is no argument that the copy of the report relied upon by Plaintiff is authentic, so if it falls within a hearsay exception it would be admissible at least in part.

Committee's Notes, which include:  (1) the timeliness of the investigation; (2) the special skill or experience of the official; (3) whether a hearing was held and the level at which it was conducted; and (4) possible motivation problems.  *See Denny v. Hutchinson Sales Corp.*, 649 F.2d 816, 821 (10th Cir. 1981).  Importantly, the textual structure of 803(8)(C) "assumes admissibility [of such reports] in the first instance."  FED. R. EVID. 803 advisory committee's note.  In other words, "they are presumed not to be excluded under the hearsay rule."  *Moss v. Ole S. Real Estate*, 933 F.2d 1300, 1305 (5th Cir. 1991).

The first factor—timeliness—weighs in favor of trustworthiness.  The report reflects that the DOJ was investigating the use of force by the Albuquerque Police Department between 2009 and 2013.  The investigation began in November 2012.  *Doc. 133*, Ex. 1 at 5.  The report was issued on April 10, 2014.  Given the nature of the investigation and its close proximity to incidents being investigated, the investigation's timeliness favors a finding of trustworthiness.

The second factor—the special skill or experience of the official—also weighs in favor of trustworthiness.  The investigation was conducted jointly by the DOJ Civil Rights Division and the United States Attorney's Office for the District of New Mexico.  Officials in those organizations possess both special skill and experience in evaluating the conduct of law enforcement personnel against constitutional standards.

The third factor—whether a hearing was held and its level—is equally balanced on the issue of trustworthiness.  Although no hearings with formal procedures or an

4

opportunity to cross-examine witnesses were held, the investigation was not akin to a Star Chamber. To begin, the investigation obtained information from many sources, including "agency stakeholders, such as the department's officers, supervisors, and command staff; [and] other stakeholders in the City including the officer's union representatives, police oversight commissioners and investigative staff, City officials, and community group leaders." *Id*. at 7. Moreover, the investigators "held four community town hall meetings . . . and conducted initial and follow-up interviews of hundreds of people." *Id*. Finally, they "reviewed an extensive volume of documents provided . . . by the department including a random sample of more than 200 force reports [and all] files of officer-involved shootings between 2009 and 2012 that resulted in fatalities." *Id*. at 8. Thus, while the findings have not yet been tested in the best manner—in the crucible of cross-examination—Defendant City of Albuquerque was sufficiently involved in the investigations and the process was sufficiently open such that this factor does not strongly weigh against trustworthiness under 803(8).

The fourth and final listed factor – "possible motivation problems" – also does not weigh against trustworthiness. Defendant City has argued that "motivation problems" are present because the report seeks to justify the DOJ's putative litigation against the City and its law enforcement practices. However, the City's argument presumes that, from the outset of the investigation through the publication of the report, the DOJ had prejudged the City, and that the investigation and report were

simply designed to support that prejudgment.  There is no evidence to support this premise.  Furthermore, as of today, the DOJ has initiated any litigation against the City.

Outside of the four factors listed in the Committee Notes, Defendant City points to other issues to demonstrate a lack of trustworthiness.  First, they argue that factual errors in the DOJ report fatally undermine its trustworthiness.  For example, they highlight the DOJ's apparently erroneous assertion that detectives failed to canvass the area for witnesses during the review of the shooting of Daniel Tillman.  *Doc. 141* at 4, n.1.  Assuming this assertion is in error, it does not equate to the 46-page report lacking trustworthiness.  Barring a far greater pattern of material errors, this error more properly goes to the weight a jury should give to findings in the report rather than to their admissibility.  *See Moss*, 933 F.2d at 1306-07.

Second, Defendant City argues that the standard used by the DOJ in its primary conclusion—"we have reasonable cause to believe that APD engages in a pattern or practice of use of excessive force, including deadly force, in violation of the Fourth Amendment and Section 14141"—is not the proper "standard under which to evaluate an alleged Fourth Amendment violation for the use of force, rather this standard is one of objective reasonableness."  *Doc. 141* at 6.  As Defendant City notes, the "reasonable cause" standard is the standard which dictates whether the DOJ may initiate a civil action against a law enforcement agency.  *See* 42 U.S.C. § 14141(b).  However, the fact that the report specifically asserts that the Section 14141 standard is met with respect to

the alleged pattern and practice does not mean that the investigators applied the incorrect standard as to the findings relevant to the Court.  As will be discussed more fully herein, the Court is not considering the full report for the purposes of the instant motion.  Rather, the Court is focusing on the DOJ's findings on whether individual uses of force were excessive and unconstitutional and how they compare to APD's conclusions on those same incidents.  As to these findings, the Court is persuaded that the DOJ investigators applied the correct constitutional standards.[2]  *See doc. 133* at 7-9. Accordingly, the difference in standards does not detract from the trustworthiness of the relevant findings in the report.

Based on the foregoing, the Court concludes that neither the sources of information nor the circumstances surrounding the DOJ report would prohibit its admission under Rule 803(8)(C).

**B.    DOJ Report as "Newly Discovered Evidence"**

Having found that some portions of the report are admissible, the Court must still determine if they support granting a Rule 59 motion to reconsider.  As stated above, the Court may grant a motion under Rule 59 if compelled by the presentation of "new evidence [which was] previously unavailable[.]"  *Paraclete*, 204 F.3d at 1012.  The DOJ report was issued after Plaintiff responded to the relevant motion for summary judgment.  Indeed, it was issued after the Court issued its ruling on the matter.

---

[2] The Court need not, and does not, express any opinion regarding the DOJ's conclusions.  *See Moss, 933 F.2d* at 1306-07.

However, many of the findings in the report were based on events that took place much earlier.  It does not, therefore, follow that the material findings were necessarily new, previously unavailable evidence.  On this point, it is useful to consider what the DOJ's findings mean in the context of this case.  In short, the DOJ investigative team, through the report, is filling the role of an expert expressing opinions that support Plaintiff's theory of the case.  *See Moss*, 933 F.2d at 1308 (equating credibility determination regarding government report under 803(8)(C) to experts testifying to their opinions). Using this analogy, while the DOJ investigators have the necessary expertise to satisfy the "trustworthiness" standard under Rule 803(8)(C), they are not uniquely qualified in the field.  Put another way, that the DOJ experts had not yet expressed their opinions when the summary judgment motion was before the Court does not mean that another expert could not have expressed similar opinions during the discovery period.  In fact, Plaintiff retained a police procedures expert witness to review APD policies and express opinions on them.  Thus, the question of "previously unavailable" in this context turns on whether an expert retained by Plaintiff could have reviewed a substantial portion of the materials reviewed by DOJ investigators sufficient to express opinions on the relevant matters in the DOJ report.  If so, then it cannot fairly be said that the findings (which are more accurately considered DOJ's expert opinions) in the report were "previously unavailable."

Having reviewed the DOJ report, it appears that much of the material underpinning the findings relevant to this case could have been discovered by Plaintiff and reviewed by an expert retained for that purpose.  For example, Plaintiff could have conducted a similar review of APD training to that which was performed by the DOJ team.  However, there is one important exception to this broad conclusion.  The DOJ investigative team was able to review hundreds of use of force reports and internal affairs investigations for incidents that spanned a period of more than four years.  Such an extensive review is not feasible for an individual plaintiff and may not have been permitted by the Court given the incredible breadth of the requisite discovery request.  Consequently, the DOJ findings based upon that review were previously unavailable to Plaintiff and are a proper basis for his Rule 59 motion.

### C.    Particular Findings Being Considered

Having spoken only generally about the findings from the DOJ report to be considered, the Court will now identify them more specifically.[3]  The first finding which will be considered is as follows:

> [W]e reviewed 200 incidents through a sampling of use of force reports and internal affairs investigations for a period spanning January 2009 through April 2013.  Of the force incidents we reviewed, APD identified less than 1% of these reports as unreasonable uses of force.  In contrast, we concluded that approximately a third of the same incidents involved officer conduct that was unreasonable.  The disparity between our

---

[3] While this list is constructed to include findings that would be admissible at trial considering Rules 401, 403 and 803(8)(C), it is not a final ruling on the admissibility of the findings listed or the inadmissibility of those omitted.

conclusions is striking and strongly suggests a pervasive and deliberate
leniency in supervisory oversight and accountability.

*Doc. 133*, Ex. 1 at 15-16.  The Court will also consider the findings under the heading

"**Supervisory reviews do not address excessive uses of force**." *Id.* at 24-25.  The Court

will consider the findings summary related to that section which found that a "number

of systemic deficiencies contribute to the department's pattern or practice of use of

excessive force.  The most prevalent deficiency is the department's endorsement of

problematic police behavior by failing to conduct thorough and objective reviews of

officers' use of force." *Id.* at 23.  The remaining findings which that will be considered

are those relating to particular use-of-force incidents predating September 14, 2010,

where the DOJ found a constitutional violation but the APD's contemporaneous review

did not.  Per the Court's review, that list includes the following: the February 2009

shooting of Andrew Lopez, the October 2009 shooting of Dominic Smith, the January

2010 shooting of Kenneth Ellis III, the March 2010 shooting of Mickey Owings, the April

2010 tazing of "David," the December 2009 tazing of "Edward," the August 2009 tazing

of "Frank," the April 2010 tazing of "Ivan," the May 2010 tazing of "Ken," and the June

2010 tazing of "Larry."

>    **D.**    **Impact of Newly-Discovered Evidence Being Considered**

The above findings are relevant to two of Plaintiff's previously dismissed

claims—(1) the § 1983 municipal liability claim based on the supervisory failure to

properly investigate and address excessive force incidents, and (2) the state law claim for negligent supervision.

### 1.       § 1983 Municipal Liability Claim

To proceed with a claim for municipal liability under § 1983, a plaintiff must present sufficient evidence from which a reasonable jury could find three elements: (1) an official policy or custom; (2) which caused the constitutional violation; and (3) "was enacted or maintained with deliberate indifference to [the] almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

### a.       Existence of Pattern or Practice

In dismissing Plaintiff's § 1983 municipal liability claim based on failure to properly investigate excessive force claims, the Court found that Plaintiff failed to present evidence sufficient for a jury to find the first element—the existence of an official policy or custom. As summarized in the Court's April 8, 2014 Order,

> Plaintiff argues that either Defendant City failed to promulgate appropriate policies to subordinate officers for dealing with the public or, in the alternative, did institute appropriate policies but failed to enforce them with regard to the conduct of subordinate officers, including Defendants Jara and Kelly. … [I]n his responsive briefing to Defendant City's motion, Plaintiff states that Defendant City's *failure* to enact appropriate policies and failure to investigate uses of force led to a widespread officer custom of using "an unreasonable . . . amount of force during encounters with citizens. Plaintiff is essentially arguing that Defendant City's inaction (by failing to halt or correct the alleged widespread officer custom of using excessive force) is the source of its liability for the violation of Plaintiff's constitutional rights. While this

11

>argument does have considerable overlap with Plaintiff's failure-to-train
>argument, it is conceivable that, even if Defendants Jara and Kelly did
>receive proper training, that the APD still has a widespread custom of
>permitting the use of excessive force, particularly with regard to mentally
>ill citizens.  Plaintiff, however, fails to set forth evidence that Defendant
>City has a custom of condoning the use of excessive force.

*Doc. 126* at 44-45 (citations omitted).  The Court specifically noted that the high number

of shootings by APD officers was insufficient evidence on its own because "only one

out of sixty-two incidents was found to be excessive."  *Id*. at 45.  The Court also pointed

out that, based on the evidence in the record, it was undisputed that "the Albuquerque

Police Department (APD) have in place a wide array of mechanisms designed to

manage officers' use of force and to monitor and investigate officer-involved

shootings."  *Id*. at 45-46.

The DOJ findings listed above bring each of these stated premises into dispute.

Adding the evidence of those findings to the remainder of the record, a jury could find

that APD had a practice of "endors[ing] problematic police behavior by failing to

conduct thorough and objective reviews of officers' use of force."  *See doc. 133*, Ex. 1 at

23.

> b.      *§ 1983 Causation*

Having concluded that Plaintiff has presented sufficient evidence from which a

jury could find the first element of a § 1983 claim of municipal liability, the Court must

consider whether he has done the same for the causation element.  In *Monell v. New York*

*City Department of Social Services*, 436 U.S. 658, 694 (1978), the Supreme Court held that

12

municipal liability can only attach to a policy which "caused" the plaintiff's injury. Since that time, the Court has made clear that "causation" in this context must be particularly direct and strong.  There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  In fact, to "establish the causation element, the challenged policy or practice must be 'closely related to the violation of the plaintiff's federally protected right.'  This requirement is satisfied if the plaintiff shows that 'the municipality was the 'moving force' behind the injury alleged.'"  *Schneider*, 717 F.3d at 770 (quoting Martin A. Schwartz, *Section 1983 Litigation Claims & Defenses*, § 7.12[B] (2013) and *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997)).  The Court has described its causation requirement in this context as "stringent," and demanded that lower courts "carefully test the link between the policymaker's inadequate decision and the particular injury alleged."  *Brown*, 520 U.S. at 410, 415.

Thus, Plaintiff must present sufficient evidence upon which a reasonable jury could find that the APD's policy of failing to properly investigate excessive force claims was the "moving force" behind Defendant Kelly's decision to shoot Plaintiff on September 14, 2010.  He has failed to do so.  Plaintiff relies on two pieces of evidence to make this causal connection.  First, he points to his police procedures expert who opined in his original report as follows:

> The existing APD custom and practice appears to have facilitated the
> unreasonable and excessive force that occurred and reflected a deliberate

13

> indifference to the life and safety of Mr. Barr.   The APD's collective
> approval of these tactics puts the general public at unnecessary future risk
> of death and/or injury from Officer Kelly and others on the department
> who have been, or are now, similarly trained and/or supervised.

*Doc. 98*, Ex. 20 at 10 (cited in *doc. 133* at 9).   As an initial matter, it is unclear whether, in

the context of the paragraph in Mr. Clark's report from which this quote is taken, he is

expressing an opinion about causation that is relevant here.   This paragraph primarily

deals with Officer Kelly's supposed departure from her training and the fact that she

was not subsequently disciplined or retrained.   Mr. Clark goes on to note critically that

no APD policies or training practices had changed since Officer Kelly's shooting of

Plaintiff.   Clearly, these claimed failings after the shooting could not support an opinion

that they caused the shooting.   This paragraph can only support a compelling argument

for causation if one assumes that, when Mr. Clark refers to "existing APD custom and

practice," he means, as found by the DOJ, APD's practice of "endors[ing] problematic

police behavior by failing to conduct thorough and objective reviews of officers' use of

force."   *See doc. 133*, Ex. 1 at 23.   Even making this assumption, Mr. Clark's opinion that

the "practice **appears to have facilitated** the unreasonable and excessive force used"

falls well short of the necessary causation standard for the § 1983 claim—that the

practice was the "moving force" by the shooting of Plaintiff.   The Court thus concludes

as a matter of law that no reasonable jury could find this element satisfied based solely

on the evidence of Mr. Clark's report.

14

The second claimed support for causation is the DOJ report finding that a "number of systemic deficiencies contribute to the department's pattern or practice of use of excessive force.  The most prevalent deficiency is the department's endorsement of problematic police behavior by failing to conduct thorough and objective reviews of officers' use of force."  *Id.* at 23; *see also id.* at 4 ("[I]nternal accountability and policy failures combine with the department's inadequate training to contribute to uses of excessive force. Additionally, serious limitations in the City's external oversight processes have allowed many of these deficiencies to continue unabated.").  Standing alone, however, this opinion from the DOJ does not meet the high causation standard in a § 1983 case for several reasons.

First, the DOJ report reaches its conclusions on the basis of APD's conduct over a period of over four years, but Plaintiff's shooting occurred less than halfway through the period investigated.  Given the nature of Plaintiff's claim—that the laxity of use-of-force reviews began to communicate an endorsement of excessive force to officers in the field—this difference is important.  Even accepting Plaintiff's theory, it necessarily takes significant time for such supervisory failures to begin to impact the conduct of officers in the field.  Consequently, the DOJ finding that the department[] endorse[d] problematic police behavior by failing to conduct thorough and objective reviews of officers' use of force" is weakened when applied to Plaintiff's shooting which occurred early in the relevant period.

Second, even construing the DOJ's ultimate findings as being fully applicable in September 2010, the "causation" findings are weak when considering only those pertaining to deficiencies in use-of-force reviews.  The DOJ report repeatedly concludes that the failure of the use-of-force reviews did not operate alone to increase the risk of excessive force.  *See id.* at 23 ("A number of systemic deficiencies contribute to the department's pattern or practice of use of excessive force.  The most prevalent deficiency is the department's endorsement of problematic police behavior by failing to conduct thorough and objective reviews of officers' use of force."); *see also id.* at 4 ("[I]nternal accountability and policy failures combine with the department's inadequate training to contribute to uses of excessive force.  Additionally, serious limitations in the City's external oversight processes have allowed many of these deficiencies to continue unabated.").  Moreover, the findings consistently use the term "contribute" as opposed to "cause" when discussing the impact of deficient use-of-force reviews.  Indeed, the only appearance of the term "cause" on this point is in the header "Systemic Deficiencies Cause or Contribute to the Use of Excessive Force" suggesting that DOJ views those concepts as related but distinct.  *See doc. 133* at 23.  As will be discussed below, a finding that something "contributed" to some event may support causation under an ordinary negligence standard.  However, given the stringent causation requirement for municipal liability under § 1983, this word choice is significant.

Finally, the DOJ findings on "causation" lack any connection between the alleged municipal policy and the shooting of Plaintiff.  Under § 1983, Plaintiff must establish "a direct causal link" that is "closely related to the violation of [his] federally protected right."  *Canton*, 489 U.S. at 385; *Schneider*, 717 F.3d at 770.  Yet there is no evidence supporting the conclusion that APD's alleged policy or custom of authorizing and/or not punishing the use of excessive force as a general matter was closely or directly linked to Defendant Kelly's decision to shoot Plaintiff.  *See, e.g.*, *Lawson v. City of Seattle*, 2014 WL 1593350, at *14 (W.D. Wash. Apr. 21, 2014); *see also* Memorandum Opinion and Order, *Sanchez v. City of Albuquerque*, 12-cv-1161-JB-KBM, *Doc. 44* at 31-32 (D.N.M. April 30, 2014).

These issues prevent the DOJ findings, either alone or in conjunction with Mr. Clark's report and the rest of the record, from qualifying as sufficient evidence by which a reasonable jury could find the APD's alleged policy or practice was the moving force behind Defendant Kelly's shooting of Plaintiff.  Consequently, Plaintiff's motion to reconsider the § 1983 municipal liability claims will be denied.

17

## 2.    State Law Claim for Negligent Supervision

Despite denying Plaintiff's motion as it pertains to § 1983 municipal liability, the

Court must nonetheless revisit its dismissal of Plaintiff's related state law tort claim of

negligent supervision.  *See doc. 126* at 52-53.[4]  With the addition of the DOJ findings

before the Court, Plaintiff has sufficient evidence by which a reasonable jury could find

that APD had a practice of endorsing problematic police behavior by failing to conduct

thorough and objective reviews of officers' use of force.  If a jury did so, such could

constitute negligent supervision "under traditional tort concepts of duty and the

reasonably prudent person's standard of care in the performance of that duty."  *See*

N.M. Stat. Ann. § 41-4-2(B) (West).  To fall within the waiver of immunity provided in

the New Mexico Tort Claims Act, Plaintiff must also show that the negligent

supervision of APD officers caused Defendant Kelly to commit an unlawful battery

and/or violate the rights of Plaintiff through the use of excessive force.  *See Ortiz v. New*

*Mexico State Police*, 112 N.M. 249, 251 (Ct. App. 1991).  While the Court has concluded

that the evidence in the record is insufficient to meet the stringent causation standard of

§ 1983, the standard under a negligence theory may be lower.

Despite its strong language regarding causation in § 1983 municipal liability

cases, the Supreme Court has not explicitly held that it is a more rigorous standard than

---

[4] The Court also dismissed the similar state tort claims for negligent hiring, training, discipline and
retention.  *See docs. 52* at 15; *doc. 126* at 52-53.  None of the newly discovered evidence being considered
by the Court impacts the dismissal of those claims.  However, in order to be clear, the Court understands
the alleged failure of APD to properly discipline officers for using excessive force to be an intrinsic part of
the broader negligent supervision claim which the Court is resurrecting herein.

common law proximate cause.  The Tenth Circuit has specifically noted, without

resolving, this unanswered question.  *See Schneider*, 717 F.3d 760, 780 n.11 (10th Cir.

2013).  Notwithstanding the lack of settled law on the issue, the Court is convinced that

material differences exist between the causation standard applicable to Plaintiff's § 1983

municipal liability claim and his negligent supervision claim.

The first reason for this conclusion is a comparison of New Mexico's general law

regarding causation in torts and the Supreme Court's pronouncements on § 1983

municipal liability causation requirements.  Under New Mexico law, APD's alleged

policy would have been a cause of the claimed battery if it contributed to bringing

about the battery.  NMRA, UJI 13-305.  It need not be the only explanation for the

battery nor the reason that is nearest in time or place.  *Id*.  It is sufficient if it occurs in

combination with some other cause to produce the result.  *Id*.  To be a cause, the act or

omission, nonetheless, must be reasonably connected as a significant link to the battery.

*Id*.  Boiled down, the only absolute requirements are that the policy be a significant link

which contributed to the battery.

The Supreme Court's stringent requirement, on the other hand, demands a close

and direct causal link such that the municipality's alleged policy was the moving force

behind the battery.  *See supra* at 12.  New Mexico tort law causation, at least in the

context of this case, is a materially lower requirement.  The Fifth Circuit has recognized

the difference between such causation requirements:  "[C]ausation under § 1983 is not

19

to be gauged by the standards of ordinary tort law.  Indeed, this requirement of a causal

connection in a § 1983 action often may have the practical effect of imposing a

heightened standard of proximate cause."  *Doe v. Rains Cnty. Indep. School Dist.*, 66 F.3d

1402, 1415 (5th Cir. 1995) (citations and quotations omitted) (dismissing § 1983 claims

with prejudice but dismissing state claims without prejudice on supplemental

jurisdiction grounds); *cf. Sunnyland Farms, Inc. v. Central New Mexico Elec. Co-op., Inc.*,

301 P.3d 387, 392 (N.M. 2013) (concluding "foreseeability standard for contractual

damages is more stringent than 'proximate cause' in tort law [because] [contract] loss

must have been foreseeable as the *probable* result of breach, not merely as a possibility")

(emphasis in original).  The practical difference is particularly pronounced for claims

akin to Plaintiff's § 1983 municipal liability theory based upon an alleged policy of

inadequate supervision/discipline.  *See Brown*, 520 U.S. at 403-15; *Canton*, 489 U.S. at 391;

*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985); *see also Doe*, 66 F.3d at 1415

("This causal connection requirement may take shape as a stricter test of factual

causation, but it is a more nuanced inquiry, particularly in the context of a failure to

act.").  Furthermore, distinguishing between the causation standards of Plaintiff's § 1983

municipal liability claims and his state negligence claims makes sense given the

federalism concerns inherent in resolving § 1983 claims which are not present applying

state law to the state itself.  *See Brown*, 520 U.S. at 415; *Canton*, 489 U.S. at 391-92.

The second basis for distinguishing between these standards is New Mexico's comparative negligence regime.  New Mexico law applies a "pure" comparative negligence which apportions damages based on "the percentage of negligence of each plaintiff, defendant, and non-party that **caused** the plaintiff's total damage." *Richter v. Presbyterian Healthcare Serv.*, 326 P.3d 50, 66 (N.M. Ct. App. 2014) (emphasis added). Consequently, New Mexico negligence law permits a plaintiff to recover even against a tortfeasor who causes only a relatively small portion of the harm.  This possibility stands in stark contrast to the requirement for § 1983 municipal liability that the municipality's policy/practice be the "moving force" behind the constitutional violation.

Consequently, notwithstanding Plaintiff's failure to satisfy the § 1983 causation standard for municipal liability, the Court must consider whether he has presented enough evidence by which a jury could find for him as to his negligent supervision claim against the City.  Reviewing the evidence referenced above (*see supra* at 13-14) under the lower causation requirement, the Court finds that Plaintiff has presented sufficient evidence from which a jury could find that the alleged APD policy was a significant link which contributed to the battery.  The DOJ finding that the department's problematic police behavior of failing to conduct thorough and objective reviews of officers' use of force contributed to later uses of excessive force provides sufficient evidence for the jury on tort causation.  None of the deficiencies described above when considering the § 1983 causation standard (*see supra* at 14-16) are fatal as a matter of law

21

under the New Mexico's tort causation standard.  Thus, the Court will grant the motion to reconsider as to the dismissal of Plaintiff's negligent supervision claim against Defendant City.

## IV.   CONCLUSION

For the forgoing reasons, Plaintiff Chandler Barr's Motion for Reconsideration (*doc. 133*) is GRANTED in part and DENIED in part.  The Court has reconsidered its dismissal of Plaintiff's negligent supervision claim against Defendant City, and summary judgment as to that claim is DENIED.  The Court denies Plaintiff's motion as to all other claims for which he seeks reconsideration.

Given this ruling, the Court will also reconsider its denial of Defendants' Motion to Bifurcate (*doc. 88*) because it is no longer moot.  Plaintiff shall file his response to that motion within ten days of the entry of this Order.  Defendants, if they wish, shall file their reply within ten days of service of Plaintiff's response.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**