IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHANDLER TODD BARR,

    Plaintiff,

v.                                                                 No.   12-CV-01109-GBW/RHS

CITY OF ALBUQUERQUE, *et al.*,

    Defendants.

## ORDER ON MOTIONS RELATING TO EXPERT TESTIMONY

This matter is before the Court on Defendants' *Daubert* Motion (*doc. 162*) and Plaintiff's Motion in Limine II (*doc. 196*).[1] The Court has reviewed the briefing on each motion, heard oral argument from counsel, and is fully advised. This order lays out the admissibility of expert testimony in phase one of the trial. Should phase two become necessary, the Court will provide additional guidance as to expert testimony in that phase.

Both counsel have expressed an intention to present "police practices" expert testimony to assist the jury in determining if the shooting was reasonable. The disputes over this testimony fall into one of four categories: (i) relevance, (ii) *Daubert* methodology concerns, (iii) extent of expertise; and (iv) prohibition on legal conclusions.

---

[1] The instant motions raise issues regarding the permissibility of use-of-force expert testimony at trial. These issues also arise to a lesser extent in Defendants' Motion in Limine III (*doc. 186*), Defendants' Motion in Limine VII (*doc. 190*), Defendants' Motion in Limine X (*doc. 194*).

1

I.      Relevance

The first dispute centers on the relevance of portions of the experts anticipated testimony, which, of course, turns on the elements of the legal question at issue. "Reasonableness is judged 'from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight.'" *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1250 (10th Cir. 2013). Assuming an expert is sufficiently qualified, courts generally allow such an expert to give their opinion about the appropriateness of a given use of deadly force. *See e.g., Zuchel v. City and County of Denver*, 997 F.2d 730, 742 (10th Cir. 1993); *see also Cavanaugh*, 718 F.3d at 1250 ("There were certainly alternative ways to ensure the jury connected the dots from the objective facts to the conclusion that force was warranted. A police practices expert could have testified that under the circumstances faced by [the particular officer] a reasonable officer would have concluded that [the individual] was a threat and used similar force."). In *Kopf v. Skyrm*, the Fourth Circuit explained one basis for permitting such expert testimony:

> As a general proposition, the "objective reasonableness" standard may be comprehensible to a lay juror. On the other hand, any "objective" test implies the existence of a standard of conduct, and, where the standard is not defined by the generic-a reasonable *person*-but rather by the specific-a reasonable *officer*-it is more likely that Rule 702's line between common and specialized knowledge has been crossed.

993 F.2d 374, 378 (4th Cir. 1993) (emphasis in original). Broadly speaking, the things that distinguish a "reasonable officer" from a "reasonable person" are training and experience. For example, officers are trained to (i) identify and evaluate threats; (ii)

understand the realities of perception, response and reaction time; and (iii) employ tactics appropriate to various circumstances. Further, officers learn more about identification of threats and the utility of various tactics through experience. Testimony from experts who can educate jurors about such training and experience is therefore admissible.

However, experts in this field often reference standard operating procedures (SOPs) for a particular department or so-called nationally recognized standards. Experts testifying on behalf of an officer seek to testify that the officer acted in conformity with those standards and that the officer's conduct was therefore reasonable. Experts testifying against an officer seek to testify that the officer's violation of a standard demonstrates the unreasonableness of the use of force. Nonetheless, the Tenth Circuit has repeatedly referred to standard operating procedures and law enforcement standards as irrelevant to the reasonableness inquiry of the Fourth Amendment. *See Tanberg v. Sholtis*, 401 F.3d 1151, 1163-64 (10th Cir. 2005); *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1221-22 (10th Cir. 2005). Moreover, the Tenth Circuit has opined that testimony about procedures and standards confuses rather than helps the jury. *Id*. As such, the Court will prohibit the use-of-force experts from testifying about nationally-recognized standards, SOPs, or their opinion that the officers complied or did not comply with them.[2] In the same vein, although the Court is permitting

---

[2] The undersigned echoes Judge Browning's thoughts regarding the potential relevance of well-established practices. *See Vondrak v. City of Las Cruces*, 2009 WL 3241555, *17 (D.N.M. Aug. 25, 2009). "The Court can imagine many sound arguments to support the proposition that accepted practices, or well-established practices, if not SOPs, should be considered at least relevant to an inquiry into what a

testimony about training, the experts will not be permitted to testify that the officers "followed" or "violated" their training.

For clarification, the Court notes the dispute between the parties relating to evidence about "procedures and tactics." Specifically, Plaintiff seeks to permit expert testimony about procedures and tactics that: (i) police officers are expected to follow when engaging a subject exhibiting signs of emotional disturbance or mental illness, and (ii) are appropriate when officers confront an individual wielding a knife. *See doc. 196* at 1. As discussed at the pretrial conference, these topics, as described, straddle the line between permissible and impermissible. General testimony about tactics which are available to officers in these situations and of which reasonable officers ought to be aware is admissible. This would include testimony about methods used to approach subjects, de-escalation techniques and other "CIT" techniques known to officers, and the availability of cover to Officer Kelly. Such testimony about various tools available to an officer is directed precisely at educating jurors about how a reasonable officer could react in a particular situation. However, Plaintiff's description of these topics – "procedures and tactics … officers are expected to follow…" / "procedures and tactics

---

reasonable officer would do. In fact, the Court wonders how the proposition that 'violation of such standards is not *ipso facto* a Fourth Amendment violation' renders any reference to such standards in a reasonable-officer inquiry totally irrelevant. The most the proposition appears to establish is that an officer may fall below well-established practices without violating the Constitution. Presumably, officers are trained and have developed established practices as a means of preventing improper conduct, including conduct that might result in excessive force, illegal searches and seizures, or other civil-rights violations. Because established practices are, perhaps, more protective of arrestee's rights arguably does not mean they are irrelevant to a Fourth Amendment inquiry." *Id*. Nonetheless, without further guidance on this point from the Tenth Circuit, the undersigned considers it the better approach to exclude "standards" testimony under the facts of this case.

appropriate when…" – gives the Court pause. *See doc. 196* at 1. Plaintiff may be seeking to present testimony that is more akin to rules or procedures that should have been followed but were not. Such testimony would be the functional equivalent of national standards and/or SOPs and will not be permitted for the same reasons as the Court is excluding national standards and SOPs. In short, the experts will be allowed to testify about the techniques available to an officer but not rules or procedures that they are "expected to follow."

Next, the Court must address the admissibility of expert testimony about less intrusive uses of force such as a Taser or a beanbag shotgun. It is well established that "the reasonableness standard does not require that officers use 'alternative less intrusive means.'" *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001). In fact, the Tenth Circuit has cautioned that consideration of the officer's failure to use such less intrusive means violates the prohibition against "evaluating the officers' conduct from the 20/20 perspective of hindsight rather than the perspective of an officer making split-second judgments on the scene." *Id*. Accordingly, the Court finds that evidence of less intrusive alternatives, such as a Taser or a beanbag shotgun, is irrelevant to the Fourth Amendment reasonableness inquiry and thus expert testimony on those topics is inadmissible.

Finally, the Court must address the admissibility of Mr. Clark's reference to "studies [that] indicate that only a few police officers in the United States ever fire their weapons in the field during their careers." *See doc. 162* at 12 quoting *doc. 98*, Ex. 20. It is

5

unclear whether Plaintiff intended to elicit this testimony from Mr. Clark because Plaintiff did not respond to Defendants' argument on this point.  In any event, such a study would have virtually no relevance to the matters at issue in this trial, and, even assuming some slight relevance, the potential for undue prejudice and confusion of the issues would mandate its exclusion under Fed. R. Evid.  403.  Therefore, testimony about or reference to this study will not be permitted.

II.     *Daubert*[3] **Methodology Objections**

Expert testimony is governed by Fed. R. Evid. 702.  The first requirement of this rule is that the expert's specialized knowledge must help the trier of fact to understand the evidence or to determine a fact in issue.  FED. R. EVID. 702(a).  In the preceding section, the Court outlined which portions of the anticipated expert testimony would assist the jury and which portions would not.  The Court finds that the expert testimony deemed relevant in the preceding section, will also be of assistance to the jury and therefore meets the first requirement of Fed. R. Evid. 702.

Rule 702 also requires that "the testimony is based on sufficient facts or data; … is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case."  FED. R. EVID. 702 (b)-(d).  In short, "to qualify as an expert, [a person is] required to possess 'such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth.'"

---

[3] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). While courts must ensure that unreliable expert testimony is not admitted, the standard for admission is a liberal one. *See United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995).

Defendants contend that the testimony of Plaintiff's expert, Mr. Clark, does not meet this standard. While Defendants do not dispute that Mr. Clark has sufficient expertise to qualify as a police practices expert, they argue that his methodology is so flawed that his testimony should be excluded. Defendants' complaints about Mr. Clark's methodology fall into three categories: (i) improper assumptions; (ii) factual inaccuracies; and (iii) improper credibility determinations.

Defendants point to two improper assumptions made by Mr. Clark in formulating his opinions. First, Mr. Clark noted in his factual overview that Plaintiff did not have any active warrants and was not a suspect of a crime. Defendants take issue with utilizing this fact because Officer Kelly did not have this information. *Doc. 162* at 4-5. Nonetheless, this fact – which does not appear to be disputed by Defendants – is a relevant and proper consideration for Mr. Clark because it establishes that Officer Kelly had no basis to detain Plaintiff beyond the conduct she observed and had been reported to her. Second, Mr. Clark referred to the knife held by Plaintiff as a "common table knife" with "no pointed edge, and just a slight serration on one edge." Defendants object to utilizing this fact because Officer Kelly knew only that it was a "knife." *Id*. There is no factual dispute about the nature of the knife. It will be admitted as an exhibit. The only dispute is how Officer Kelly perceived the knife. That

issue is for the jury to decide. Nonetheless, Plaintiff is entitled to have Mr. Clark present an opinion based on Plaintiff's position that the knife was clearly not a dangerous weapon.[4] Neither of the challenged assumptions render Mr. Clark's methodology flawed so as to prohibit his testimony under FRE 702 or *Daubert*.

      Defendants point to several alleged factual inaccuracies in Mr. Clark's factual bases. First, they note his error in recounting the pre-contact plan discussed by Officer Kelly and Jara. *Id*. at 5-6. While Mr. Clark does appear to be incorrect on this point, the Court cannot see how the error fundamentally affects his opinion so as to make it unreliable. Second, Defendants take issue with Mr. Clark's assertions about the location of Mr. Valencia. *Id*. at 6. Even assuming some error by Mr. Clark on this point, the material question is whether Mr. Valencia could sufficiently observe the relevant events. Again, that issue is for the jury to decide. Nonetheless, Plaintiff may have Mr. Clark present an opinion based on Plaintiff's position that Mr. Valencia could accurately observe the relevant events. Third, Defendants dispute Mr. Clark's statement "that Officer Kelly claimed that Mr. Barr 'lunged at her.'" *Id*. at 6-7. While this precise statement may not have been made by Officer Kelly, Defendants' position has always been that Plaintiff moved "toward Officer Kelly in an 'aggressive manner.'" *See doc. 59*, Ex. 2. The distinction between these descriptions does not seem material. It certainly does not make Mr. Clark's methodology unreliable as a matter of law. Of course, each

---

[4] Mr. Clark is not an expert on eyesight or perception. Thus, he will not be permitted to opine that he believes Officer Kelly should have been able to tell the difference between a table knife and a more dangerous knife. *E.g. doc. 98*, Ex. 20 at 9 (describing as a "key fact" that Plaintiff's weapon as a common table knife and opining that "[t]hese key facts would have been obvious to any reasonably trained officer…").

of these alleged inaccuracies and all others noted by Defendants are proper fodder for cross-examination.  The Court is simply concluding that they are insufficient – separately or together – to require exclusion of Mr. Clark's testimony under FRE 702 and *Daubert*.

The final challenge to Mr. Clark's methodology is based on his allegedly improper credibility determinations.  Defendants contend that Mr. Clark relies on witnesses he deems most favorable to Plaintiff's case.  *Doc. 162* at 7-9.  This approach is flawed because, they argue, he is making "credibility determinations" between various witnesses.  *Id*.  Defendants are correct that the "credibility of witnesses is generally not an appropriate subject for expert testimony [because] it usurps a critical function of the jury and because it is not helpful to the jury…."  *United States v. Call*, 129 F.3d 1402, 1406 (10th Cir. 1997).  Consequently, Mr. Clark will not be permitted to express his opinion about which witnesses are credible and which are not.[5]  However, it is not improper for an expert to base an opinion on assumed facts such as facts presented at trial by hypothetical questions of counsel.  *See Werth v. Makita Elec. Works, Ltd*., 950 F.2d 643, 648 (10th Cir. 1991).  It is not a methodological flaw for Mr. Clark to express his opinion about the use of force in this case based on a particular view of the disputed facts.

---

[5] On cross-examination, Defendants' counsel may of course highlight the fact that Mr. Clark's opinions are based on particular witness accounts.  However, if counsel challenges the wisdom of accepting those accounts, then she will risk opening the door to this testimony.

9

### III.  Extent of Expertise

Defendants also argue that Mr. Clark "does not have the background training and experience in the medical or psychological field to opine whether someone was 'experiencing a mental crisis.'"  *Doc. 162* at 9-10.  Plaintiff appears to concede this point and nothing in Mr. Clark's report reflects a background sufficient to present such a diagnosis.  Thus, he will not be permitted to testify that he believes Plaintiff was in fact experiencing a mental crisis.  However, Mr. Clark's law enforcement experience permits him to testify about conduct and behavior that, when observed by an officer, would cause an officer to consider that the subject was experiencing a mental crisis.

### IV.  Prohibition on Legal Conclusions

Finally, Defendants object to certain legal conclusions expressed in Mr. Clark's report.  An "opinion is not objectionable just because it embraces the ultimate issue." Fed. R. Evid. 404(a).  Nonetheless, "an expert may not state legal conclusions drawn by applying the law to the facts."  *A.E. by and through Evans v. Independent School Dist. No. 25, of Adair County, Okla.*, 36 F.2d 472, 476 (10th Cir. 1991).  In this case, the relevant legal question is whether, given the facts as the jury finds them, the officers' conduct was objectively reasonable.  In this context, permitting either use-of-force experts to express an opinion about the shooting using the term "reasonable" or "unreasonable" would in effect allow them to state a legal conclusion by applying the law to the facts.[6]  Therefore,

---

[6] At the pretrial conference, both parties agreed that neither expert would use the term "un/justified." The Court will adopt that restriction as well.

10

both experts shall limit their final opinions about the shooting to whether it was "in/appropriate" or "im/proper."

In accordance with the foregoing, Defendants' *Daubert* Motion (*doc. 162*) and Plaintiff's Motion in Limine II (*doc. 196*) are GRANTED in part and DENIED in part.

IT IS SO ORDERED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**