IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHANDLER TODD BARR,

     Plaintiff,

v.                              No.  12-CV-01109-GBW/RHS

CITY OF ALBUQUERQUE, *et al.*,

     Defendants.

**ORDER ON THE PARTIES' MOTIONS IN LIMINE**

This matter is before the Court on Defendants' Motions in Limine I–XI (*Docs. 184, 185, 186, 187, 188, 189, 190, 191, 192, 194, & 243*) and Plaintiff's Motions in Limine I, III-V (*Docs. 195, 197, 200, & 201*).[1] The Court's rulings on these motions in limine address both phases of this now bifurcated trial. Phase one will address Plaintiff's battery and excessive force claims; phase two will address his negligent supervision claim. Having considered the parties' briefing and arguments at the Pretrial Conference, and being otherwise fully advised, the Court hereby rules as follows: Defendants' Motions in Limine I-III, V-VIII, X, & XI are GRANTED in part and DENIED in part, Defendants' Motion in Limine IV is GRANTED, and Defendants' Motion in Limine IX is DENIED; Plaintiff's Motions in Limine I and III-V are GRANTED in part and DENIED in part.

---

[1] Plaintiff's Motion in Limine II (*doc. 196*) will be addressed in a separate order.

I.    **D**EFENDANTS' **M**OTIONS IN **L**IMINE

    **A. Motion in Limine I: To Exclude Evidence of Other Cases or Claims against Leah Kelly or Jennifer Jara as well as any Evidence of Other Bad Acts (*Doc. 184*).**

Defendants move to exclude evidence of other lawsuits involving Defendant Kelly and Jennifer Jara, character evidence such as rumors about Defendant Kelly's relationships with other Albuquerque Police Department (APD) officers, citizen complaints, internal affairs investigations, and disciplinary actions concerning Defendant Kelly and Ms. Jara, as well as other alleged bad acts.  *Doc. 184*.  Defendants argue that this evidence is not relevant to Plaintiff's claims, constitutes improper character evidence, and is unfairly prejudicial.

Plaintiff responds that he is only seeking to introduce evidence concerning other lawsuits against Defendant Kelly, the APD Early Warning System (EWS) reports for Defendant Kelly, an off-duty incident involving Defendant Kelly, and Defendant Kelly's smoking tobacco immediately after shooting Plaintiff, as well as other similar conduct.  *Doc. 221*.  At the pretrial conference, Plaintiff's counsel stated that the evidence at issue in this motion primarily concerned phase two and was likely not admissible for phase one.

With respect to evidence about the first lawsuit, *Herrick, et al., v. Kelly, et al.*, 1:11-cv-00624-MCA-WDS (D. N.M. July 14, 2011), the Court will not permit its admission into evidence in either phase because the actions at issue in *Herrick* are not sufficiently

similar to the case at hand to be relevant.  With respect to evidence about the lawsuit *Hernandez v. Baca, et al.*, 1:12-cv-0394-KBM-ACT (D. N.M. April 16, 2013), the Court will not permit its admission in phase one.  As to phase two, the Court holds in abeyance its ruling pending proffered evidence of the City's knowledge of this incident prior to shooting at issue here.

With respect to citizen complaints, internal affairs investigations, and EWS reports, the Court ruled that evidence of incidents involving Defendant Kelly would not be admissible in phase one.  Evidence on these incidents will be admissible for phase two subject to a Rule 403 analysis if Plaintiff can demonstrate that Defendant City of Albuquerque (City) knew or should have known about the incidents.  Pursuant to the Court's direction at the pretrial conference, Plaintiff has filed a list of incidents he seeks to admit along with a summary of proffered evidence to establish the City's knowledge. *See doc. 261.*  Defendant has filed a response.  *See doc. 267.*  Prior to the commencement of phase two, the Court will hold a hearing to give a final ruling on the admissibility in phase two of each incident.

With respect to Defendant Kelly's smoking after the shooting, the Court will permit questions in phase one directed at Defendant Kelly about what she did after the shooting.   Assuming that evidence of Defendant Kelly's smoking comes to light, Plaintiff is not permitted to argue that it violated a Standard Operating Procedure (SOP) or is otherwise probative of her state of mind.

For phase two, evidence of Defendant Kelly's smoking will be admissible beyond that permitted above only if Plaintiff demonstrates that Defendant Kelly's smoking amounted to a violation of an APD SOP which went unpunished.

Defendants' Motion in Limine I is therefore granted in part and denied in part.

### B. Motion in Limine II: To Exclude Evidence Regarding Alleged Violations of SOPs (*Doc. 185*).

Defendants move to exclude evidence of Defendant Kelly's alleged violations of SOPs regarding use of force, use of tape/digital recorders, and use of tobacco. Defendants argue that the Court "should exclude any reference to any alleged violation of SOPs because such evidence is irrelevant to the Fourth Amendment inquiry." *Doc. 185*, at 1 (citing *Tanberg v. Sholtis*, 401 F.3d 1151, 1163 (10th Cir. 2005)). Plaintiff responds that this evidence is relevant to Plaintiff's negligent supervision claim. *Doc. 222*, at 2. In addition to the SOPs Defendants listed, Plaintiff also seeks to introduce SOPs on responding to individuals suspected to be mentally ill and on rendering medical aid after using deadly force. *Doc. 222*, at 2.

For each of the above SOPs, the Court will not permit them as evidence in phase one and the parties' respective experts may not comment on them. For phase two, with the exception of the SOP on the use of tobacco, addressed above, each of the SOPs are admissible.

Defendants Motion in Limine II is therefore granted in part and denied in part.

**C. Motion in Limine III: To Exclude Evidence that Officer Kelly Allegedly did not Follow Training and/or should have used Less Intrusive Means (*Doc. 186*).**

Defendants move to exclude evidence that Officer Kelly should have used de-escalation techniques, taken cover behind her car door, retreated, used less than lethal force, and should have had Crisis Intervention Team (CIT) training. *Doc. 186*. Defendants argue that this evidence is not relevant because no requirement exists under the Fourth Amendment to take any of these actions. *Doc. 186*, at 6.

Plaintiff responds that the above evidence is directly relevant to his negligent supervision claim and indirectly relevant to his battery and excessive force claims. *Doc. 224*, at 1. Regarding phase one specifically, Plaintiff argues that evidence of CIT training "in general," Defendant Kelly's failure to use de-escalation techniques, and options other than deadly force that were available to Defendant Kelly are all relevant to Plaintiff's claim that Defendant Kelly acted unreasonably and are not unfairly prejudicial. *Id.*, at 1-2.

Regarding less intrusive means, the Court will not permit evidence regarding the availability of the beanbag shotgun. *See also doc. 272* (limitations on expert testimony). With respect to the Taser, the Court will permit questioning of Defendant Kelly and Officer Jara regarding their plan which apparently involved the possible deployment a Taser. Further evidence about the availability of the Taser will not be permitted.

Evidence about whether Defendant Kelly was CIT certified will not be permitted in phase one, but, as to its admission in phase two, the Court will hold its ruling in abeyance.

In phase one, the Court will permit general testimony about tactics which are available to officers in relevant situations and of which reasonable officers ought to be aware.  This would include testimony about methods used to approach subjects, de-escalation techniques and other "CIT" techniques known to officers, and the availability of cover to Officer Kelly.  For phase two, because Plaintiff's failure to train claim has been dismissed, evidence of these techniques is no longer relevant and is therefore inadmissible.

Defendants' Motion in Limine III is therefore granted in part and denied in part and held in abeyance in part.

### D.  Motion in Limine IV: To Exclude Evidence related to Plaintiff's Arrest, Detention, and Prosecution (*Doc. 187*).

Plaintiff concurs in this motion, and the Court will grant it.  Evidence of Plaintiff's arrest, detention, and prosecution is therefore excluded from both phases of trial.

### E.  Motion in Limine V: To Exclude Some of Plaintiff's Witnesses (*Doc. 188*).

Defendants move to exclude 68 potential witnesses from testifying at trial.  *Doc. 188*.  For all but three of these witnesses, Plaintiff concurs.  *Doc. 188*.  The three contested witnesses are Robbin Burge, a former APD officer; Leon Howard, an attorney

in Albuquerque; and Nicole Moss, a former Assistant District Attorney.  Ms. Burge is the subject of Defendants' Motion in Limine VI so the Court will address the admissibility of her testimony in that motion.

Regarding Mr. Howard and Ms. Moss, Defendants oppose their testimony on the grounds that neither witness was present during the shooting so they lack firsthand knowledge about the incident, their relaying what they might have heard about the incident is inadmissible hearsay, neither is an expert so they may not offer opinion testimony about the incident, and their testimony would likely contain impermissible character evidence.  *Id.*, at 5-9.

Plaintiff concedes that neither of these witnesses testimony is admissible for phase one.  *Doc. 226*, at 3.  Plaintiff argues that testimony by these witnesses is, however, admissible for phase two to demonstrate that Defendant Kelly had engaged in prior bad acts and that Defendant City was on notice of such acts.  *Doc. 200*, at 5-6.

Regarding Mr. Howard, the Court will not permit him to testify in phase one, but will hold its ruling on his phase two testimony in abeyance.  Whether Mr. Howard will be permitted to testify will depend on the evidence put forth by Plaintiff to demonstrate that Defendant City was on notice of Defendant Kelly's conduct involving him.

Regarding Ms. Moss, Plaintiff expressly does not seek to introduce her testimony in phase one.  For phase two, Ms. Moss's testimony regarding her opinion of Defendant Kelly would be largely based upon the specific incident evidence that the Court is

admitting subject to the City's knowledge.  *See supra* p. 3.  Thus, her opinion testimony

would be cumulative.  Moreover, given her position as a state prosecutor, her opinion

would be unduly prejudicial.  Her testimony will be excluded under Federal Rule of

Evidence 403.

Defendants' Motion in Limine V is therefore granted in part, denied in part, and

hold in abeyance in part.

### F.  Motion in Limine VI: To Exclude Testimony by Robbin Burge (*Doc. 189*)

Defendants seek to exclude testimony from Robbin Burge, a former APD Officer,

who was both present at the scene after Plaintiff was shot and involved in a separate

incident involving Defendant Kelly in June 2010.  Defendants argue that Ms. Burge was

not present during the shooting, her involvement leading up to the shooting is only

marginally relevant, and her expected testimony will include impermissible character

evidence.  *Doc. 189*, at 1-2.

Plaintiff responds that Ms. Burge can offer critical testimony about the events

leading up to the shooting as a fact witness and is therefore relevant and admissible.

*Doc. 228* at 2.  Plaintiff also contends that Ms. Burge's testimony about Defendant

Kelly's involvement in the June 2010 incident is relevant to Plaintiff's negligent

supervision claim and therefore admissible for phase two.  *Id.*, at 2-3.

For phase one, to the extent relevant, the Court will permit Ms. Burge's

testimony as a fact witness who arrived near the scene shortly after the shooting.

However, the Court will not permit Ms. Burge's testimony about her being closer to the scene than Defendant Kelly when the call went out or about Defendant Kelly's allegedly cancelling Ms. Burge's call. For phase two, the Court has taken under advisement its ruling on the admissibility of the June 2010 incident. *See supra.* p. 3-4. Should evidence of that incident be admitted, Ms. Burge may testify about her personal knowledge of it.

Defendants' Motion in Limine VI is therefore granted in part and denied in part.

### G. Motion in Limine VII: To Exclude the April 10, 2014 Department of Justice Letter and the Police Executive Research Forum Report or any Reference Thereto by other Witnesses (*Doc. 190*).

Defendants seek to exclude from evidence the Department of Justice Letter (DOJ Report) and the Police Executive Research Forum Report (PERF Report) and any reference to these reports by any witness. Defendants argue that the PERF Report does not fall within a hearsay exception and that the DOJ Report lacks the requisite trustworthiness to fall within the public records exception. *Doc. 190*, at 2. Defendants further argue that both reports are irrelevant and, even if relevant, are unfairly prejudicial, misleading, and would confuse the jury. *Id.,* at 1.

Plaintiff responds that the Court has already addressed the hearsay issue and found the DOJ Report trustworthy enough to fall within the public records exception to the hearsay rule. *Doc. 227*, at 1-3 (citing Order on Plaintiff's Motion for Reconsideration, *Doc. 178*). Plaintiff further argues that his negligent supervision claim makes both reports' probative value outweigh any prejudice to Defendants. *Id.,* at 3.

At the Pretrial Conference, Plaintiff informed the Court that he had chosen not to admit the PERF Report.  Given this decision, the Court will deny this portion of Defendants' motion as moot.

Regarding the DOJ Report, it is excluded from evidence for phase one.  For the phase two, the Court will admit those portions of the report deemed admissible in the Court's Order on Plaintiff's Motion to Reconsider for the reasons set forth in that order.  *See Doc. 178*, at 9-10.  The Court has filed a redacted version of the report which it proposes to admit.  *See doc. 273.*

### H. Motion in Limine VIII: To Exclude Evidence from other Law Suits (*Doc. 191*).

Defendants seek to exclude from evidence 26 filings from other law suits against the City and other APD officers.  Plaintiff states that he does not seek to admit these filings for phase one, unless the door is opened, but does seek to use many of the filings for phase two.  Accordingly, for phase one, the Court will not permit this evidence except for impeachment purposes.

For phase two, Defendants argue that "lawsuits in which Officer Kelly has not been a named party and which do not involved [sic] the circumstances that she confronted" the day of the shooting have no bearing on whether there is a causal nexus between the City's alleged negligent supervision and Defendant Kelly's use of force.  *Doc. 191*, at 4.  Defendants further argue that, even if relevant, evidence of other

lawsuits against the City would confuse the jury and evidence of lawsuits against

Officer Kelly specifically would be unfairly prejudicial.

Plaintiff responds that the issue is not whether Defendant Kelly is involved in

every incident for which a filing has been made, but whether the City's negligent

supervision "in general caused, at least in part, Defendant Kelly's battery of Plaintiff."

*Doc. 229*, at 2.  At the Pretrial Conference, Plaintiff informed the Court that the only

contested portions of this motion pertained to Plaintiff's Contested Exhibits 48-53,

which were to be included in the list of other act evidence that the Court would be

considering for Defendants' Motion in Limine I.  *See supra* p. 3.  Prior to the

commencement of phase two, the Court will hold a hearing to give a final ruling on the

admissibility of these items.[2]

### I.   Motion in Limine IX: To Prohibit Hypotheticals to Non-Expert Witnesses (*Doc. 192*).

Defendants seek to prohibit Plaintiff from asking former Police Chief Raymond

Schultz and other police officers hypothetical questions on the grounds that they were

not designated as expert witnesses in accordance with Fed. R. Civ. P. 26.  *Doc. 192*, at 2.

Plaintiff responds "that Fed. R. Evid. 701 permits Plaintiff to ask hypothetical questions

based on first-hand knowledge or observation."  *Doc. 230*, at 1.  At the Pretrial

Conference, Defendants stated that they were not concerned about hypotheticals other

---

[2] Subsequent to the pretrial conference, Plaintiff has filed a list of incidents he seeks to admit along with a summary of proferred evidence to establish the City's knowledge.  *See doc. 261.*  However, it does not appear that these items were included on that list.

than those posed to Mr. Schultz, as the parties have entered into a stipulation on the matter.

The Court will deny Defendants' Motion in Limine IX and permit Plaintiff to pose hypotheticals to Mr. Schultz. The Court will, however, entertain objections to specific hypothetical questions posed to Mr. Schultz at trial.

**J.   Motion in Limine X: To Exclude All Other Irrelevant Evidence (*Doc. 194*).**

Defendants seek to exclude all other irrelevant evidence and lists 11 specific pieces of evidence for exclusion as irrelevant, unfairly prejudicial, likely to cause juror confusion, and a waste of time. *Doc. 194*, at 1-2. Defendants argue that "[n]one of [the listed information] is probative of Plaintiff's claims for excessive force and battery as this information involves unrelated and/or collateral issues," and that the listed information is also unrelated to the issue of whether there is a causal relationship between the alleged negligent supervision and Defendant Kelly's use of force. *Id.*, at 5-6. The 11 listed items will be addressed in turn. Ultimately, the Court will grant in part and deny in part Defendants' Motion in Limine X.

1.   *Raymond Schutz's KRQE Television Interview.*

First, regarding the KRQE interview of Mr. Schultz, the Court has reviewed the video and will not permit its admission into evidence. The interview's relevance turns on whether it can support a theory of liability on behalf of the City for negligent supervision. The Court noted at the Pretrial Conference that whether this evidence

would be relevant in phase two would depend on whether Mr. Schultz's comments demonstrated a reflexive reaction by the City in automatically finding police shootings justified.  After reviewing the video, the Court finds that Mr. Schultz's comments do not demonstrate such a reaction.  In the interview, Mr. Schultz comments on some of the circumstances of the shooting, such as the involvement of a mentally ill person and a table knife, but he does not state an ultimate conclusion on whether Defendant Kelly's shooting Plaintiff was justified.  Consequently, his interview comments are not sufficiently relevant to Plaintiff's negligent supervision claim to be admissible.  Plaintiff may, however, use the interview for impeachment purposes as appropriate.

>     2.   *Witness Brian Swainstain's political contribution to Darren White.*

Second, Defendants list political contributions to Darren White by Brian Swainstain, an acquaintance of Ms. Jara and witness to the shooting.  Darren White was a city official who oversaw APD at the time of the shooting.  Plaintiff argues that Mr. Swainston's contributions are therefore relevant to demonstrate his bias in favor of law enforcement.  *Doc. 231*, at 2.  The Court disagrees and will not permit evidence of Mr. Swainstain's political contributions.  Plaintiff may, however, ask Mr. Swainstain about his relationship with Ms. Jara.

3. & 4. *Officer Kelly's firearm was not department issued and was marketed as the official firearm of a section of the LAPD, but was later discontinued over civil rights concerns.*

Third and fourth, Defendants oppose the admission of evidence that Officer Kelly's firearm was not department issued and is related to a section of the LAPD that is notorious for civil rights violations.  For the battery and excessive force claims, Plaintiff argues that Defendant Kelly's weapon is needed to "set the scene."  *Doc. 231* at 3.  For the negligent supervision claim, Plaintiff argues that the purchase and use of non-department weapons is relevant because the officers viewed the weapons as status symbols and the DOJ Report took issue with this practice.

The Court will not permit testimony about APD officers being allowed to purchase their own weapons nor about Defendant Kelly's firearm being associated with the LAPD.  The portions of the DOJ Report addressing APD officers' use of personal firearms are also excluded.

5. *Asking non-expert witnesses about their use of force encounters.*

Fifth, Defendants raise concerns about mini-trials regarding other officers' uses of force.  At the Pretrial Conference, Plaintiff informed the Court that he would not offer any evidence or elicit any testimony on this topic.  The Court will deny this portion of the motion as moot, but will address specific questions as they arise at trial.

6.   *Asking witnesses their opinions of Defendant Kelly and/or Officer Jara*

Sixth, Defendants raise concerns about witnesses providing opinions about Defendant Kelly and/or Ms. Jara, particularly Robbin Burge and Officer Grover. Plaintiff's witness list does not include Officer Grover, *see Doc. 252*, and, at the Pretrial Conference, Plaintiff stated that they did not intend to put forth opinion evidence.

Generally speaking, for phase one, the Court will not permit testimony about Defendant Kelly's or Ms. Jara's character unless done in compliance with Fed. R. Evid. 404 or 608.  For phase two, the parties are to approach the bench prior to asking questions that might elicit opinion evidence about Defendant Kelly and/or Ms. Jara.

7.   *Asking witnesses their opinions of the DOJ Report.*

Seventh, Defendants seek to exclude testimony about the DOJ Report.  For phase one, the Court has found that the DOJ Report is inadmissible and testimony about the Report is not permitted.  For phase two, each party's expert will be permitted to state their agreement or disagreement with the portions of the DOJ Report that have been admitted by the Court.

8.   *Asking witnesses about "rumors" about Defendant Kelly and/or Officer Jara.*

Eighth, at the Pretrial Conference, Defendants noted that Plaintiff had asked about rumors during depositions and moved to prohibit such questions from being asked at trial.  Plaintiff stated that they did not intend to elicit any evidence of rumors, but would approach the bench prior to attempting to enter such testimony.

As with opinion evidence, the Court will not permit testimony about Defendant Kelly's or Ms. Jara's character unless done in compliance with Fed. R. Evid. 404 or 608. For phase two, the parties are to approach the bench prior to asking questions regarding rumors about Defendant Kelly and/or Ms. Jara.

9.   *Admitting evidence regarding the Repeat Offender Program letterhead.*

Ninth, Defendants seek to exclude the introduction of the Repeat Offender Programs letterhead as neither Defendant Kelly nor Ms. Jara were members of that division at the time of the shooting.  Plaintiff concurs in this portion of Defendants' motion and does not intend to offer this evidence unless, during phase two, Defendants open the door.  *Doc. 231*, at 4.  The Court will exclude this evidence for both phases of trial unless, in phase two, Defendants open the door.

10.  *Using videos from depositions in a misleading or disparaging manner.*

Tenth, Defendants raised concerns at the Pretrial Conference about counsel using photos or still frames of witnesses that are unflattering to the witness during opening or closing arguments.  Plaintiff stated that they had no intention of doing so.

Any exhibits that are not pre-admitted that counsel wish to use during argument must be shown to opposing counsel prior to doing so.  If opposing counsel objects to the use of a particular exhibit, the Court will then determine whether the exhibit may be used during argument.

16

11. *Other information not pertaining to the deadly force encounter on September 14, 2010.*

Finally, Defendants stated at the Pretrial Conference that they included this final item as a catchall, but did not believe that any stone had been left unturned and had no specific issues left to address.  The Court denies this portion of the motion accordingly and will address any other matters as they arise at trial.

As outlined above, Defendants' Motion in Limine X is granted in part and denied in part.

**K.  Motion in Limine XI: To Exclude Gordon Eden as a Witness (*Doc. 243*).**

Defendants seek to exclude APD Police Chief Gordon Eden as a witness on the grounds that Plaintiff failed to notice Chief Eden as a lay witness, let alone as an expert witness, Chief Eden has no personal knowledge of the events in question, and the untimely disclosure would prejudice Defendants.  *Doc. 243*, at 1-3.

Plaintiff responds that Defendants were put on notice on September 24, 2014, when Plaintiff listed Chief Eden as a potential witness in the draft pretrial order sent to Defendants by email.  *Doc. 249*, at 1.  Plaintiff further stated that he seeks to use Chief Eden only to establish the City's receipt of the DOJ Report, and to demonstrate Chief Eden's involvement in the issuance of the DOJ Report, his knowledge of APD protocols at the time of the reports issuance, and the trustworthiness of the Report.  *Id.*, at 2.  The parties have stipulated to the City's receipt of the DOJ Report so Chief Eden's testimony

17

on that matter would be cumulative and will be excluded.  Regarding Chief Eden's knowledge of APD practices when the Report was released and his knowledge of the trustworthiness of the Report, the Court will grant Defendants motion and exclude such testimony.

Regarding Chief Eden's involvement in the DOJ investigation and subsequent report, the Court will hold its ruling on his testimony for this purpose in abeyance. Whether the Court will permit testimony for this purpose will depend on whether Plaintiff can offer a detailed proffer about the contents of Chief Eden's testimony and how that testimony would rebut any arguments about the trustworthiness of the DOJ Report.

Defendants' Motion in Limine XI is therefore granted in part and denied in part.

## II.   PLAINTIFF'S MOTIONS IN LIMINE

### A.  Motion in Limine I: Seeking Designation of Named Defendants, Other APD Police Officers, and Any City Employee as Adverse Witnesses (*Doc. 195*).

Plaintiff moves to designate a number of witnesses as adverse witnesses under Fed. R. Evid. 611(c).  Plaintiff argues that the listed witnesses, by virtue of being employed by Defendant City of Albuquerque, have all identified with an adverse party. Defendants concur with respect to Defendant Kelly, Raymond Schultz, and Jennifer Jara, but otherwise contest the motion.  Defendants argue, however, that a blanket designation of the other identified witnesses as adverse would be premature and that

the Court should make such a determination at trial based on the testimony of the witnesses.  *Doc. 208*, at 1.

The Court will grant the motion with respect to Defendant Kelly, Raymond Shultz, Jennifer Jara, and Richard Aragon, a city transit officer.  The Court will otherwise deny the motion but will revisit the issue as necessary at trial.

Plaintiff's Motion in Limine I is therefore granted in part and denied in part.

### B.  Motion in Limine III: Seeking Court Approval to use Relevant Objects in Defendants Custody as Demonstrative Exhibits (*Doc. 197*).

Plaintiff seeks to use the following as demonstrative exhibits: (1) the firearm used by Defendant Kelly to shoot Plaintiff; (2) the knife wielded by Plaintiff; (3) an APD issued Taser; and (4) an APD issued beanbag shotgun.  *Doc. 197*, 1-3.  Defendants argue that the table knife and firearm are not needed as demonstratives because photos of the items are available as exhibits, the use of these items at the scene is not disputed, and there are obvious safety concerns associated with bringing these items into a courthouse.  *Doc. 210*, 1-2.

The Court will permit the use of the firearm used by Defendant Kelly to shoot Plaintiff and the knife wielded by Plaintiff as demonstrative exhibits.  Having excluded evidence related to the availability of a bean bag shotgun and, with a limited exception, a Taser, the Court will not permit these items as demonstrative exhibits.

Plaintiff's Motion in Limine III is therefore granted in part and denied in part.

### C.  Motion in Limine IV: Seeking to Introduce Evidence of Defendant Kelly's Prior Bad Acts and Similar Evidence (*Doc. 200*).

Plaintiff's Motion in Limine IV seeks to admit into evidence Defendant Kelly's involvement in other lawsuits, internal affairs complaints against her, EWS reports about her, the June 2010 incident, her use of tobacco after the shooting, and other similar conduct.  *Doc. 200*, at 1.  Plaintiff's Motion in Limine IV is granted in part and denied in part as outlined in the Court's ruling on Defendants' Motion in Limine I.

### D.  Motion in Limine V: To Exclude Evidence of Plaintiff's Character or Alleged Crimes, Wrongdoings, or Similar Acts (*Doc. 201*).

Plaintiff seeks to exclude evidence of his comments that he was homicidal and/or suicidal, had used illegal drugs, had acted out, and had charged Defendant Kelly, as well as evidence of other alleged misdeeds.  *Doc. 201*.   Plaintiff argues that such evidence is irrelevant because none of it was within the mind of the officer at the time of the shooting.  Defendants argue that this evidence is probative of the following: Plaintiff's bias against law enforcement, his homicidal intentions on the day of the shooting, his credibility and manipulative behavior, and his claim for damages.  *See generally doc. 212.*

Regarding Plaintiff's comments about having homicidal thoughts a month before the shooting, the Court will permit evidence of such statements.  The key issue in the instant case is whether Plaintiff was moving toward Defendant Kelly in an aggressive manner when she shot him.  It is Defendants' theory that Plaintiff was in fact

20

performing an aggressive homicidal act toward Defendant Kelly when he was shot. Statements which reveal the "future intent of the declarant to perform an act [are admissible] if the occurrence of that act is at issue." *United States v. Freeman*, 514 F.2d 1184, 1190 (10th Cir. 1975). Certainly, the lack of a direct threat toward police officers and the time period between the statements and the incident reduces the probative value of the statements. However, with respect to the time period, the Court notes that Plaintiff was in the hospital for the majority of the month between the statements and the incident. Therefore, the time between Plaintiff's homicidal statement and his opportunity to act on that statement is much shorter. In the end, the Court concludes that, while these issues may reduce the evidentiary weight of the statements, they do not prohibit their admission.

Regarding Plaintiff's past drug use, the Court will permit cross examination regarding Plaintiff's use of "spice," but this line of questioning is to take place outside of the hearing of the jury. If Defendants establish that Plaintiff's "spice" use occurred prior the shooting, the Court will consider whether extrinsic evidence of Plaintiff's prior use will be permitted.

Regarding Plaintiff's statements that he charged Defendant Kelly, the Court will permit Plaintiff's comment on his YouTube account that he charged Defendant Kelly, as well as Brian Flick's testimony by deposition that Plaintiff reported charging Defendant Kelly.

With respect to other postings by Plaintiff on his YouTube account, the Court will permit evidence of the number of comments and other postings to demonstrate his proficiency with online posting.  However, the contents of the comments and videos will be excluded.

Regarding Plaintiff's other encounters with law enforcement, the Court will address such evidence on a case-by-case basis.  Counsel are to approach the bench prior to asking questions on this topic.

Plaintiff's Motion in Limine V is therefore granted in part and denied in part.

### III.   CONCLUSION

Wherefore, Defendants' Motions in Limine I-III, V-VIII, X, & XI are GRANTED IN PART and DENIED IN PART, Defendants' Motion in Limine IV is GRANTED, and Defendants' Motion in Limine IX is DENIED; Plaintiff's Motions in Limine I and III-V are GRANTED IN PART and DENIED IN PART.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**