# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CHANDLER TODD BARR,

     Plaintiff,

v.                                   No. 12-CV-01109-GBW-RHS

THE CITY OF ALBUQUERQUE, and
LEAH KELLY, in her individual capacity,

     Defendants.

## PRETRIAL ORDER

This matter is before the Court pursuant to Fed. R. Civ. P. 16.

## I.  APPEARANCES

Attorneys who will try this action:

For Plaintiff                 Carolyn M. "Cammie" Nichols & Brendan Egan

For Defendant(s)           Stephanie M. Griffin

## II.  JURISDICTION AND RELIEF SOUGHT

**A.**    **Subject Matter Jurisdiction.**

    **1.  Was this action removed or transferred from another forum?  _x_ Yes __ No**

        If yes, was the action removed or transferred?

      ___X___ Removed    _____ Transferred    <u>Second Judicial</u> Original forum

    **2.  Is subject matter jurisdiction of this Court contested?**

      ___X___ Uncontested    _____ Contested _____ Party contesting

     **3.**     **Asserted basis for jurisdiction.**

     ___X___ Federal Question     _____ Diversity     _____ Other

Statutory Provision(s) Invoked:  <u>New Mexico Tort Claims Act, NMSA 1978, § 41-</u>

<u>4-12 42 U.S.C. § 1983, and the Fourth Amendment to the U.S. Constitution</u>

**B.**     **Personal Jurisdiction and Venue.**

     **1.**     **Is personal jurisdiction contested?**

     ___x___ Uncontested     _____ Contested

Identify the party contesting personal jurisdiction and basis for objection:

_____

     **2.**     **Is venue contested?**

     ___X___Uncontested _____ Contested _____ Party Contesting

Identify the party contesting personal jurisdiction and basis for objection:

_____

**C.**     **Are the proper parties before the Court?**

     ___X___ Uncontested     _____ Contested

If contested, identify each missing party or improper party and the basis for

contention:

_____

**D.**     **Identify the affirmative relief sought in this action.**

     1.     Plaintiff seeks:

a)   Judgments against Defendants Kelly and City;

b)   Compensatory damages;

c)   Punitive damages against Defendant Kelly under § 1983 claims;

d)   Pre- and post-judgment interest on any amounts recovered; and

e)   Recovery of the costs of action herein, including both attorneys' fees on Plaintiff's § 1983 claims, pursuant to 42 U.S.C. § 1988.

2.   Defendants seek: A judgment in their favor resulting in a dismissal of all of Plaintiff's claims plus recovery of taxable costs against Plaintiffs.

## III.  BRIEF DESCRIPTION OF NATURE OF CLAIMS/DEFENSES[1]

**A.   Plaintiff's claims:**

1.   Fourth Amendment and 42 U.S.C. § 1983 – Excessive Force against Defendant Kelly

2.   Battery against Defendant Kelly and City (New Mexico Tort Claims Act)

3.   Negligent supervision/discipline against Defendant City (New Mexico Tort Claims Act)

---

[1] Plaintiff does not waive and continues to assert the violations of his constitutional rights against dismissed Defendants and against the Defendants named herein.

**B.      Defendant's defenses:**   *(A defendant claiming entitlement to qualified immunity must set forth with specificity the basis of the defense.)*

1.      The actions of Officer Kelly were objectively reasonable under the totality of circumstances as she acted in good faith and took reasonable steps to protect herself and/or others from being harmed.

2.      Officer Kelly is entitled to qualified immunity because she did not commit a clearly established constitutional violation.

3.      Defendants also maintain that their immunity has not been waived under the New Mexico Tort Claims Act because their actions were reasonable, lawful, and in good faith.

4.      Officer Kelly did not commit the tort of battery because her actions were not unlawful.

5.      Defendant City of Albuquerque did not negligently supervise Officer Kelly.

6.      There is no casual connection between any alleged negligent supervision and the force used by Officer Kelly.

7.      Plaintiff's injuries and/or losses were proximately caused by the negligence, intentional misconduct or other fault of Plaintiff and/or a third person(s) for which Defendants are not liable.

8.      Plaintiff's claim for punitive damages lacks requisite factual support and otherwise fails as a matter of law.

The facts supporting Officer Kelly's entitlement to qualified immunity are as follows:

On September 14, 2010, Plaintiff walked into the Greyhound bus station where he claims that he inquired whether he could continue his trip to his final destination if he had to discontinue his bus trip for a medical reason.  Just a few days prior, Plaintiff had been evaluated at the University of New Mexico Hospital by Dr. Gabriela Prieto who had opined that he did not need to be admitted because Plaintiff had initially denied suicidal ideation, and then subsequently said that he was suicidal only once he learned that he was not going to be admitted.  It was her opinion that Plaintiff was manipulative in the sense that if his needs were not met, then he would change his story.

Greyhound employee Ryan Trujillo told Plaintiff that if he had documentation to prove he was in the hospital, then he could continue onto his final destination.  After being told this, Plaintiff claims that he was going to walk to the University of New Mexico Hospital to obtain the documentation.  While angry and aggravated, Plaintiff claims that he left the Greyhound bus station and walked down the sidewalk where he sat down in an effort to calm down.  Plaintiff claims that while he was sitting down, he thought about suicide and that somehow he just knew there was a knife behind a fence so he claims that he retrieved this knife, used the sidewalk to sharpen the knife, and then started cutting his arm with it.  Plaintiff acknowledges that the knife was sharp

enough to where it could be used to kill.  Plaintiff walked back into the bus station with this knife.  When Plaintiff re-entered the bus station, Mr. Trujillo observed that Plaintiff had blood running downing his arm and he also saw that Plaintiff was holding a knife in his hand so he called 911.

Mr. Trujillo claims that when he called 911, Plaintiff walked out the front doors so Mr. Trujillo and Greyhound security guard, Jamie Mason, also went outside the bus station. At this juncture, Mr. Trujillo observed Plaintiff walk towards 1st Street where he turned north towards Central Avenue and then entered inside a parking garage.  Mr. Trujillo lost sight of Plaintiff while he was in the parking garage so he explained the situation to City of Albuquerque Security Officer Robert Aragon, so that Mr. Aragon could drive around and look for Plaintiff.  Mr. Trujillo next saw Plaintiff exiting through the parking garage entrance located on 2nd Street where he observed Plaintiff turn north heading towards Central Avenue. Mr. Trujillo observed Plaintiff intermittently slash his arm with the knife as he walked on the sidewalk. Mr. Trujillo said that he, Jamie Mason, and Robert Aragon formed a triangle around Plaintiff to attempt to keep people out of his way because they did not know if he was going to harm someone.

When Ryan Trujillo called 911, APD Dispatch relayed that there was a male with a knife at the Greyhound bus station located at 320 1st Street so Officer Kelly and Officer Jara responded to the call.  While en route, Officer Kelly heard over the radio that the individual with the knife went from 320 1st Street, to the parking garage, and then was

heading northbound on 2nd Street towards Central Avenue.  Officer Kelly requested that additional units be dispatched to the scene since it was reported that the male still had the knife.  Mr. Trujillo flagged Officer Kelly down as soon as she arrived in the vicinity. Officer Kelly then stopped her vehicle near the middle of the intersection at 2nd and Central, exited her police car and went towards the front it.  It was at this point that Mr. Trujillo pointed to the male with the knife, who was later identified as Plaintiff Chandler Barr.

Officer Kelly saw Plaintiff walking northbound on 2nd Street while holding a metal object. Officer Kelly surmised that the metal object that Plaintiff had in his hand was a knife based upon the information relayed over the dispatch. When Officer Kelly arrived on scene, she did not observe Plaintiff cutting himself with the knife but instead, he appeared to be walking in a tense, rigid manner.    Officer Kelly could see that Plaintiff had a metal object that he was holding in his right hand, clenched down at his side with the object pointed slightly upward and outward. Officer Kelly saw him heading in the direction towards a group of people so she un-holstered her weapon in the low-ready position and said to him "Stop" and "Drop the knife"  in a raised voice because she wanted to make sure that he could hear her amongst all the vehicle and foot traffic in the area.

When Officer Kelly drew her firearm and gave Plaintiff commands, she remained at the front of her car and did not move forward. After Officer Kelly

commanded Plaintiff to stop and drop the knife, Plaintiff turned, looked at her and stepped off the sidewalk and headed towards her. Several witnesses also observed Plaintiff disregard Officer Kelly's commands and advance directly at her.  Plaintiff has written a statement and told others that he "charged" or was "charging" at Officer Kelly.

As Plaintiff advanced towards Officer Kelly, she continued to give him commands to "Stop, drop the knife" but Plaintiff did not stop or drop the knife as he advanced on her so she shot him twice. Officer Kelly estimates that Plaintiff was approximately 11 to 12 feet away from her when he was shot.  Officers with the Albuquerque Police Department receive "edged weapon training" which includes training on the "21 foot rule" which entails training officers that there is a high probability that an officer will not be able to properly defend against someone who is 21 feet or less away and armed with an edged weapon.   The approximate distance from the blood splatter which was located on the street after Plaintiff was shot to the front tire of Officer Kelly's vehicle is 20:9.9 feet and therefore this indicates that Plaintiff was less than 21 feet from Officer Kelly since she was in front of her vehicle when he was shot

After the shooting took place, Plaintiff admits that he wrote the following statement:

> I do see grounds for her Behavior, because I was Charging her but the story was. that I went to A psych Ward and they did'nt want to accept me. I Honestly needed to be in there. I was Distraught very Distraught.

I do Appreciate her shooting me Honestly, because it Woke me up

## IV.  FACTUAL CONTENTIONS UNDERLYING CLAIMS/DEFENSES

**A.     Stipulated Factual Contentions.**

The parties agree to the following facts listed separately below:

The parties hereto stipulate and agree that venue is properly laid in this District; that the United States District Court for the District of New Mexico has jurisdiction of the parties and the subject matter.  The parties further stipulate and agree that the law governing this case is:  42 U.S.C. § 1983, the Fourth Amendment to the U.S. Constitution, 42 U.S.C. § 1983, and the New Mexico Tort Claims Act (NMSA 1978 §§ 41-4-1, *et seq.*).  The parties are willing to further stipulate to the following facts:

1.   At all material times hereto, Defendant Kelly acted under color of state law.

2.   At all material times hereto, Defendant Kelly acted in the course and scope of her employment.

3.   At all times materials hereto, Defendant Kelly was and is a law enforcement officer.

4.   On September 14, 2010, Defendant Kelly, while on duty as a City of Albuquerque law enforcement officer, used lethal force against Plaintiff Chandler Barr, shooting him twice with her duty weapon.

5.   After being shot twice, Plaintiff Chandler Barr was taken to the University of New Mexico Hospital to receive treatment.

6.  As set forth in the parties' *Stipulations Concerning Trial Evidence and Testimony Related to Plaintiff's Medical and Mental Health Treatment* (Doc. 135), the parties agree to the relevancy and authenticity of the medical records and medical bills specifically referenced in the stipulation [Doc. 135] concerning Plaintiff's treatment by medical providers for injuries caused by, or related to, the gunshot wounds Plaintiff received on September 14, 2010.

7.  As set forth in the parties' Stipulations Concerning Trial Evidence and Testimony Related to Plaintiff's Medical and Mental Health Treatment (Doc. 135), the parties agree that the treatment of Plaintiff by medical providers specifically referenced in the stipulation [Doc. 135] for injuries caused by, or related to, his gunshot wounds was reasonable and necessary.

**B.    Contested Material Facts.**

   **1.    Plaintiff's Contentions:**

On September 14, 2010, in the area of 2nd Street NW and Central Avenue, downtown Albuquerque, New Mexico, Plaintiff Chandler Barr was shot by Defendant Kelly.  As a result of this shooting, Mr. Barr sustained life threatening and permanent injuries.  The force used against Plaintiff by Defendant Kelly was unlawful and excessive.

Chandler Barr has suffered from disabling mental health issues for most of his life.  He has been hospitalized on numerous occasions in order to receive treatment for

his mental health conditions.  On September 10, 2010, Chandler Barr arrived in

downtown Albuquerque on a Greyhound bus from Oklahoma, en route to Oregon.

Barr stepped off the bus in downtown Albuquerque, at the Greyhound bus station on

First Street and Lead Avenue, because he felt unwell.  He then called 911 and informed

the dispatcher that he had suicidal feelings.  When APD officers arrived at the bus

station, Chandler told the responding officers, which does not include any of the

individual Defendants, that he had past mental health issues, including being a bipolar

schizophrenic, that he had been suicidal, and that he was having difficulties with those

health issues – that voices in his head were telling him to cut his own throat and meet

Satan.  Medical personnel arrived on scene, assessed Mr. Barr, and transported him to

the University of New Mexico Hospital to treat a broken finger with a referral for

subsequent care at the University of New Mexico Psychiatric Center.  After treatment

for the broken finger, Mr. Barr was transported to the UNM Psychiatric Center, where

he remained for three days.

On the morning of September 14, 2010, Mr. Barr returned to the Greyhound

station on First Street and Lead Avenue in downtown Albuquerque upon discharge

from the University of New Mexico Psychiatric Center.  Mr. Barr requested that the bus

company change his ticket due to his recent hospitalization, but bus company

employees informed him that he could not change his bus ticket unless he paid a fee or

produced documentation verifying his hospitalization.  Mr. Barr then left the bus

station, procured a butter knife with a rounded tip, re-entered the bus station, and began to cut his left arm with the butter knife, creating superficial lacerations. The bus station staff noticed that Mr. Barr had blood on his left arm and approached him. Mr. Barr told them to leave him alone. Mr. Barr then walked out of the bus station. At no point did Mr. Barr verbally threaten anyone in the bus station, nor did he make any threatening gestures towards anyone in the bus station or anywhere else.

At approximately 8:11 a.m., concerned about Mr. Barr's well-being, a bus station employee called the police to express his concern. That same employee, along with a bus station security guard, began following Mr. Barr, as Mr. Barr walked north on First Street. At approximately 8:14 a.m., Officer Jennifer Jara responded to this dispatch call reporting that a white male (Mr. Barr) was walking in the area of First Street and Central Avenue cutting his arm with a knife. At approximately 8:15 a.m., Defendant Kelly also responded to the same dispatch call, even though a different officer, Officer Robbin Burge, was initially assigned to the call along with Officer Jara. Despite Defendant Kelly's assertion to the contrary, Officer Burge was closer to the scene than Defendant Kelly. Before responding officers arrived on the scene, APD dispatchers and the responding officers, including Defendant Kelly and Officer Jara were aware that Mr. Barr exhibited behavior likely indicating psychological problems. Prior to arriving on scene, Defendant Kelly and Officer Jara conferred about their plan of action: Defendant Kelly would use less-than-lethal force (such as her taser), if necessary, while Officer Jara

would provide lethal cover with her firearm. After walking in several different directions for several minutes, Mr. Barr, approached the intersection of Central Avenue and Second Street as Defendant Kelly and Officer Jara arrived at the same intersection. While he was walking Mr. Barr did not threaten anyone.  He did, however, draw the butter knife across his forearm several times as he walked, causing lacerations of his skin.  The two greyhound employees, along with a security guard employed by Defendant City, followed Mr. Barr as he walked along downtown, kept in contact with dispatch via cell phone, and easily kept other people out in public at a safe distance from Chandler.

Defendant Kelly and Officer Jara stopped their patrol units near the intersection of Central Avenue and Second Street.  Defendant Kelly and Officer Jara got out of their vehicles and immediately drew their duty weapons, pointing them at Mr. Barr as he stood on the sidewalk at the corner of Central Avenue and Second Street.  Defendant Kelly immediately screamed at Mr. Barr while aiming her gun at him.  Defendant Kelly's screams drew Mr. Barr's attention to her, and Mr. Barr walked off the side walk and towards Defendant Kelly, holding the butter knife at his side in a non-threatening manner.  Mr. Barr's walking speed was slow to normal, and witnesses describe him as appearing "confused" or "dazed" as he walked toward Defendant Kelly and Officer Jara, both of whom had their firearms drawn and pointed at Mr. Barr.  Mr. Barr made no threats toward Defendant Kelly or Officer Jara.  He was visibly bleeding as a result

of the self-inflicted wounds on his left arm.  Defendant Kelly fired two rounds at Mr.

Barr, without justification, hitting his torso twice.  Defendant Kelly was at least twenty-

four (24) feet, if not more, from Chandler when she shot him twice.

　　　　After being shot, Mr. Barr dropped the butter knife and fell to the ground.

Defendant Kelly immediately approached Mr. Barr and kicked the butter knife out of

Mr. Barr's reach.  Officer Jara yelled at Mr. Barr to put his hands behind his back, an

order that was extremely difficult for Mr. Barr to comply with as a result of the multiple

gunshot wounds to his torso.  Despite his serious gunshot wounds and his obvious

incapacitation due to pain, Officer Jara used her foot to forcibly push Mr. Barr as he was

then handcuffed with his hands behind his back.  He was then made to sit up.  While

waiting for emergency rescue personnel to arrive, neither Defendant Kelly nor Officer

Jara provided any medical assistance to Mr. Barr as he sat on the street, handcuffed,

bleeding from the two bullet wounds.

　　　　Plaintiff also contends that Defendant City negligently supervised and

disciplined APD Officers in general, and specifically Defendant Kelly as well, which, in

part at least, caused Defendant Kelly to batter Mr. Barr and use excessive force against

him on September 14, 2010.  *See* Doc. 178, at pages 18-22; *see also* Docs. 196, 200, and 226-

229.

　　　　**2.　　　Defendant's Contentions**:

There are no material facts in dispute precluding Defendants obtaining judgment in their favor. Defendant Kelly's conduct was objectively reasonable under the totality of circumstances and therefore she is entitled to qualified immunity. Defendants' immunity has not been waived under the New Mexico Tort Claims Act because there is no evidence that Defendants committed battery under Section 41-4-12 of the Act or that there was negligent supervision or alleged negligent supervision which allegedly caused the commission of a battery.

## V.  APPLICABLE LAW

**A.**     **Do the parties agree which law controls the action?**

     __X__ Yes  _____ No

**If yes, identify the applicable law:**  New Mexico Tort Claims Act, NMSA 1978, § 41-4-1, et seq., 42 U.S.C. § 1983, and the Fourth Amendment to the U.S. Constitution and the case law interpreting these provisions.

**If no, identify the dispute and set forth each party's position regarding the applicable law.**

        1.      Plaintiff

        2.      Defendant

        3.      Other Party

## VI.  CONTESTED ISSUES OF LAW

**Identify the specific issues of law which are contested.**

1.      Plaintiff:

      a.      Whether Defendant Kelly used excessive force/battered Plaintiff on September 14, 2010;

      b.      Whether Defendant Kelly enjoys qualified immunity for her actions;

      c.      Whether Defendant City committed the tort of negligent supervision;

      d.      Any contested issues of law set forth in Plaintiff's Motions in Limine.

2.      Defendant:

      a) Whether Defendant Kelly is entitled to qualified immunity;

      b) Whether Defendant Kelly committed a clearly established constitutional violation;

      c) Whether Defendants' immunity has been waived under the New Mexico Tort Claims Act.

## VII.  MOTIONS

**A.      Pending Motions (indicate the date filed):**

1.      Plaintiff:

     2.     Defendants

**B.**    **Motions which may be filed:**

     1.     Plaintiff:     <u>None contemplated at this time</u>.

     2.     Defendant:   <u>None at this time.</u>

Briefing must be complete and filed with the Court by _____.

## VIII.  DISCOVERY

**A.**    **Has discovery been completed?**  <u>  X  </u> Yes _____ No

If no, discovery terminates on _____.

**B.**    **Are there any discovery matters of which the Court should be aware?**

## IX.  ANTICIPATED WITNESSES

*Each party is under a continuing duty to supplement this list and the description of anticipated testimony.  This does not, however, apply to a rebuttal witness.  Indicate if the witness will testify in person or by deposition and include a brief description of the anticipated testimony.  If the testimony is by deposition, identify the deposition by page number and line number.  A witness who has not been identified and whose testimony has not been disclosed may not testify at trial unless good cause is shown.*

    **A.**    **Plaintiff's Witnesses:**  All witnesses will testify in person.

**Will Call – Phase One of Trial**

    1.     Marcos Esquibel, City of Albuquerque Employee, Witness to Shooting

          Mr. Esquibel may testify as to what he witnessed on September 14, 2010, the events leading up to the shooting set forth in the Complaint, and what transpired thereafter.

    2.     Ricardo Valencia, City of Albuquerque Employee, Witness to Shooting

Mr. Valencia may testify as to what he witnessed on September 14, 2010, the events leading up to the shooting set forth in the Complaint, and what transpired thereafter.

3.      Kutlu Gulamber, Witness to Shooting

It is anticipated that Mr. Gulamber will testify about his observations of Plaintiff and/or Officer Kelly and Officer Jara on September 14, 2010.

4.      Ryan Trujillo, Greyhound Security Guard, Witness to Shooting

It is anticipated that Mr. Trujillo will testify about his observations of and interactions with Plaintiff and/or Officer Kelly and Officer Jara on September 14, 2010. It is also anticipated that Mr. Trujillo will testify about the 911 call that he made on September 14, 2010.

5.      Jamie Mason, Greyhound Employee, Witness to Shooting (By deposition designation)

It is anticipated that Mr. Mason will testify about his observations of and interactions with Plaintiff and/or Officer Kelly and Officer Jara on September 14, 2010.

6.      Bryan Barr, Plaintiff's Uncle

Bryan Barr is Chandler Barr's uncle and may testify as to Chandler's background, the assistance he has provided to Chandler, and his observations concerning Chandler before and after the shooting incident at issue in this lawsuit.

7.      Chandler Barr, Plaintiff

Chandler Barr is the Plaintiff in this case.  It is anticipated that he will testify to the best of his ability his recollection of the shooting at issue in this lawsuit and the events leading up to the shooting.  He will also testify as to the basis for the award of damages resulting from the trauma and emotional distress he has suffered.

8.      Jennifer Jara, former APD Officer, Involved in Shooting

Ms. Jara will testify as to her role and participation in the shooting on September 14, 2010 which is the subject matter of this lawsuit. She will also testify regarding any pertinent matters relating to Plaintiff's negligent supervision/discipline claim.

9.      Leah Acata f/k/a Leah Kelly, Defendant

Ms. Kelly will testify as to her role and participation in the shooting on September 14, 2010 which is the subject matter of this lawsuit. She will also testify regarding her background, training, career as a law enforcement officer, any citizen complaints regarding her conduct as a law enforcement officer, and other pertinent matters.

10.     Juliana Serna, APD Detective, Investigated Shooting

Detective Serna may testify as to her knowledge of the shooting and role in the investigation of the shooting on September 14, 2010 involving Chandler Barr, including but not limited to the LEICA data she helped create and utilize.

11.     Roger Clark, Police Procedures Expert

Expert Roger Clark will testify as to his report and review of the materials provided to him, and including SOPs for APD.  *See* Doc. 196.

**May Call – Phase One of Trial:**

1.      Dr. Gabriela Prieto, UNM Treating

2.      Andrea Ortiz, APD Detective

3.      Records custodians or foundation witnesses, as needed

4.      Any witness listed by Defendants

**Will Call – Phase Two of Trial**

1.      Raymond Schultz, Former Chief of Police

It is anticipated that Chief Schultz will testify about matters related to Plaintiff's negligent supervision/discipline claims against Defendant City, including issues related to the April 2014 Department of Justice Letter to Defendant City.

2.      Roger Clark, Police Procedures Expert

Expert Roger Clark will testify as to his report and review of the materials provided to him, and including SOPs for APD.  *See* Doc. 196.

3.      Leah Acata f/k/a Leah Kelly, Defendant

Ms. Kelly will testify as to her role and participation in the shooting on September 14, 2010 which is the subject matter of this lawsuit. She will also testify regarding her background, training, career as a law enforcement officer, any citizen complaints regarding her conduct as a law enforcement officer, and other pertinent matters.

**May Call – Phase Two of Trial**

1.      Robbin Burge, Retired APD Officer, Involved in Shooting

2.      Gordon Eden, current Chief of Police for City of Albuquerque

It is anticipated that Chief Eden will testify about matters related to Plaintiff's negligent supervision/discipline claims against Defendant City, including issues related to the April 2014 Department of Justice Letter to Defendant City.

3.      Leon Howard, involved in June 2010 incident with Defendant Kelly

Mr. Howard may testify regarding relevant issues pertaining to Plaintiff's negligent supervision/discipline claim against Defendant City.

4.      Records custodians or foundation witnesses, as needed

5.      Any witness listed by Defendants

**B.      Defendant's Witnesses:**

**Defendants will call:**

1. Officer Leah Kelly (in person testimony)

   It is anticipated that Officer Kelly will testify concerning her training, experience, and about the events concerning deadly force encounter that took place between she and Plaintiff on September 14, 2010. It is also anticipated that Officer Kelly may also testify about her supervision, her supervisors, evaluations, and letter of commendation.

2. Detective Juliana Serna (in person testimony)

   It is anticipated that Detective Serna will testify concerning her training, experience, and about what she did as part of her investigation and her role in the investigation into the officer involved shooting which took place on September 14, 2010. It is also anticipated that Detective Serna will testify about and interpret the leica imaging data that was taken on scene

**Defendants may call:**

1. Juan Alcay (in person testimony)

   It is anticipated that Mr. Alcay will testify concerning what he witnessed during the  deadly force encounter that took place between Officer Kelly and Plaintiff on September 14, 2010.

2. Richard Aragon (in person testimony)

   It is anticipated that Mr. Aragon will testify concerning his encounter with Plaintiff before Officer Kelly arrived on scene and what he witnessed during the  deadly force encounter that took place between Officer Kelly and Plaintiff on September 14, 2010.

3. Alan Barrington (in person testimony)

   It is anticipated that Mr. Barrington will testify concerning what he witnessed during the  deadly force encounter that took place between Officer Kelly and Plaintiff on September 14, 2010.

4. Jessica Brumfield (in person testimony)

It is anticipated that Ms. Brumfield will testify concerning what he witnessed during the  deadly force encounter that took place between Officer Kelly and Plaintiff on September 14, 2010.

5.   Mark Cleveland (in person testimony)

It is anticipated that Mr. Cleveland will testify concerning what he witnessed during the  deadly force encounter that took place between Officer Kelly and Plaintiff on September 14, 2010.

6.   Mark Elrick

7.   Brian Flick (via deposition)

Defendants will offer Mr. Flick's deposition testimony so designated in Defendants' Notice of Deposition Designation [Doc. 202]  filed on September 9, 2014

8.   Kutlu Gumlamber (in person testimony)

It is anticipated that Mr. Gumlamber will testify concerning what he witnessed during the  deadly force encounter that took place between Officer Kelly and Plaintiff on September 14, 2010.

9.   Jennifer Jara (in person testimony)

It is anticipated that Ms. Jara will testify concerning her response to the APD dispatch which was prompted by Ryan Trujillo's 911 call as well as her observations and actions in responding to this call and when she arrived at the intersection of 2nd Street and Central.

10.   Cassandra Kukowski (in person testimony)

It is anticipated that Ms. Kukowski may also testify about her supervision and evaluations of Officer Kelly and about Officer Kelly's work performance.

11.   Michael Maestas (in person testimony)

It is anticipated that Mr. Maestas will testify concerning what he witnessed during the  deadly force encounter that took place between Officer Kelly and Plaintiff on September 14, 2010.

12. Greg Martin (in person testimony)

It is anticipated that Mr. Martin will testify concerning what he witnessed during the  deadly force encounter that took place between Officer Kelly and Plaintiff on September 14, 2010.

13. Jamie Mason (via deposition)

Defendants do not anticipate calling Mr. Mason as a witness, but in the event that Plaintiff designates any portion of his deposition since the parties have discovered that he is unavailable for trial, Defendants reserve the right to designate the following deposition testimony of Mr. Mason during trial:

Page 9, line 14 – Page 10, line 7; Page 10, line 15 – Page 15, line 16; Page 18, line 22 – Page 22, line 6; Page 23, line 2 – Page 29, line 14; Page 30, line 25 – Page 34, line 25; Page 36, line 12 – Page 37, line 10; Page 37, line 20 – Page 39, line 24; Page 40, line 2 – Page 40, line 9; Page 40, line 13 – Page 43, line 17; Page 43, line 25 – Page 44, line 24; Page 45, line 9 – Page 47, line 12; Page 47, line 18 – Page 49, line 2; Page 49, line 6 – Page 55, line 25.

14. Lieutenant Glenn St. Onge

It is anticipated that Lieutenant St. Onge may also testify about his supervision and evaluations of Officer Kelly and about Officer Kelly's work performance.  Lieutenant St. Onge may offer rebuttal testimony concerning the Albuquerque Police Department's CIT training and tactics

15. Detective Andrea Ortiz

It is anticipated that Detective Ortiz will testify concerning her training, experience, and about what she did as part of her investigation and her role in the investigation into the officer involved shooting which took place on September 14, 2010.

16. Dr. Gabriela Prieto (in person or via deposition)

Defendants may offer Dr. Prieto's deposition testimony so designated in Defendants' Notice of Deposition Designation [Doc. 202] filed on September 9, 2014

17. Raymond Schultz

Defendants do not anticipate calling former APD Chief Raymond Schultz as a witness. However, depending upon the Court's ruling concerning certain evidentiary matters, Defendants reserve the right to call Mr. Schultz as a witness to testify about the policies and procedures of the Albuquerque Police Department; the department's investigation into Officer Involved Shootings; the supervision of its officers, the evaluation process, disciplinary measures, and supervisory mechanisms in place to monitor officers. Mr. Schultz also may testify concerning the disciplinary issues which have arisen with respect to former Officer Robbin Burge and the investigation into her alleged untruthfulness.

18. Brian Swainston

It is anticipated that Mr. Swainston will testify concerning what he witnessed during the deadly force encounter that took place between Officer Kelly and Plaintiff on September 14, 2010.

19. Ryan Trujillo

It is anticipated that Mr. Trujillo about his 911 call and will testify concerning his encounter with Plaintiff before Officer Kelly arrived on scene and what he witnessed during the deadly force encounter that took place between Officer Kelly and Plaintiff on September 14, 2010.

20. Don Whitson

It is anticipated that Don Whitson will testify about matters identified in his Rule 26 expert report as well as matters and opinions which he observes from courtroom testimony presented in this case

21. Any witnesses necessary to authenticate documents

22. Any witness identified by Plaintiff

23. Any witness identified in discovery

## X.  TRIAL PREPARATION

**A.     Exhibits.**

On October 9, 2014, the parties filed their Second Amended Stipulated Exhibit List. *See* Doc. 250.

On October 21, 2014, Plaintiff filed his Second Supplemental Contested Trial Exhibit List.  *See* Doc. 268.

On October 24, 2014, Defendants filed their Amended Contested Trial Exhibit List.  *See* Doc. 274.

As exhibits are modified or supplemented, the parties will file new lists.

**B.     Witness Lists.**

On October 24, 2014, Plaintiff filed his Third Amended Trial Witness List.  *See* Doc. 275.

On October 13, 2014, Defendants filed their Second Amended Trial Witness List. *See* Doc. 254.

**C.     Voir Dire.**

1.     If allowed, do the parties wish to participate in voir dire?

Plaintiff          __X__ Yes _____ No

Defendant          __X__Yes _____ No

2.      The parties provided their "Proposed Voir Dire Questionnaire" to the Court.  *See* Docs. 214-1 & 239-1.  Plaintiffs and Defendants have filed additional proposed voir dire questions.  Defendants' objections to certain of Plaintiff's proposed questions have been overruled.

**D.      Jury Instructions and Verdict.**

**1.      Submission of Proposed Instructions.**  In accord with the Court's Order Setting Trial, the parties filed their agreed upon Uniform Jury Instructions with the Court. *See* Doc. 223.

**Plaintiff:**      Plaintiff filed his proposed contested Jury Instructions on September 16, 2014.  *See* Doc. 223.

**Defendants:**   Defendants have filed their proposed jury instructions [Doc. 213] on September 15, 2014.

**E.      Statement of Case.**

The Statement of the Case has been filed. *See* Doc. 247.

## XI. OTHER MATTERS

**B.      Length of Trial and Trial Setting.**

1.      This action is a       _____ Bench Trial   ___x___ Jury Trial   _____ Both

2.      The case is set for trial on   __October 27, 2014__.

3.      The estimated length of trial is estimated to take **6-8** days depending on whether the court grants Defendant's Motion to Bifurcate and/or if Plaintiff presents his

negligent supervision/discipline claim to the jury. **The case (phase two) shall be submitted to the jury no later than Wednesday, November 5, 2014, at 12:00 p.m.**

## XII. MODIFICATIONS-INTERPRETATION

The Pretrial Order when entered will control the course of trial and may only be amended *sua sponte* by the Court or by consent of the parties and Court approval.  The pleadings will be deemed merged herein.

GREGORY B. WORMUTH
United States Magistrate Judge
**Presiding by Consent**