IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


CHANDLER TODD BARR,

     Plaintiff,

v.                                 No.  12-CV-01109-GBW/RHS

CITY OF ALBUQUERQUE,
RAY SCHULTZ, in his official capacity,
LEAH KELLY, in her individual capacity,
JENNIFER JARA, in her individual capacity,
and ANDREA ORTIZ, in her individual capacity,

     Defendants.


<u>ORDER DENYING MOTION</u>

     This matter is before the Court on the Plaintiff Chandler Barr's Renewed Motion for Judgment as a Matter of Law and Alternative Request for New Trial.  *Doc. 297.* Having reviewed the accompanying briefing (*docs. 299, 301*), and being fully advised, the Court will DENY the Motion.

I.    RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

    **A. Original Motion**

     Beginning on October 27, 2014, this Court presided over a week-long trial on claims arising out of the shooting of Plaintiff by Defendant Officer Kelly.  Two causes of action were presented to the jury: (1) violation of federal constitutional right to be free from excessive force, and (2) state law battery.  As the jury was instructed, an officer can

be liable for using excessive force in two separate ways.  First, an officer is liable if she uses force beyond that which a reasonable and prudent police officer would have applied under the circumstances of the case.  *See doc. 284* at 15-16.  Second, "even if [the force used] would have been otherwise justified," the officer is liable if her "deliberate or reckless conduct immediately connected to the use of deadly force unreasonably created the need to use that force."  *Id*. at 17.

At the close of Plaintiff's case-in-chief, Defendants moved for judgment as a matter of law on all claims.  *Doc. 295* at 310-11.  In response, Plaintiff addressed the first theory of liability, arguing "[t]here is certainly plenty of disputed fact where a jury could find that Mr. Barr posed no credible threat, was not making an aggressive or hostile motion with the weapon he was carrying towards Defendant Kelly at the time that she decided to shoot him, and was not moving towards her in a rapid manner when she decided to shoot him."  *Id*. at 342.  Plaintiff later addressed the second theory of liability, explaining "there is evidence that Officer Kelly responded recklessly when she went to the scene, drove consistently there in front of Jara, drew her gun, by some witnesses' testimony immediately upon exiting her vehicle."  *Id*. at 343.  Plaintiff then highlighted other evidence to support a reckless creation theory of liability and closed by saying, "And so I think she recklessly created the need to use deadly force against Chandler Barr."  *Id*. at 343-44.  Upon hearing all arguments from the parties on

Defendants' motion for judgment as a matter of law, the Court denied the motion with

the exception of punitive damages, which was taken under advisement.  *Id*. at 350.

Defendants then proceeded to present their case-in-chief, which was followed by

some rebuttal evidence from Plaintiff.  *See docs. 295, 296*.  After Plaintiff's rebuttal case

was concluded, Defendants again moved for judgment as a matter of law on all claims.

*Doc. 296* at 201-02.  Plaintiff's counsel indicated that she would:

> rely on the arguments we made yesterday after close of evidence, and
> again with respect to the punitive damages instruction.
>      There has been sufficient evidence to prove the case, certainly
> plenty of disputed facts as to whether Mr. Barr posed an actual threat or
> made any gesture at all with the knife towards Defendant Kelly.
>      Also, there's plenty of evidence of her recklessness and a callous
> disregard for his constitutional rights in the manner in which she sped to
> the scene, pointed the gun immediately, pointed the barrel at him before
> he even turned towards her, and the other evidence we discussed
> yesterday evening.

*Id*. at 202-03.

The Court decided it would take Defendants' motion under consideration, but let

all claims go to the jury.  Believing all Rule 50 motions to be concluded, the Court

turned to jury instructions.  However, Plaintiff's counsel interjected, stating, "Your

Honor, we have one quick plaintiff's motion, actually."  *Id*. at 204.  The entirety of that

motion was as follows:

> The plaintiff has a motion to -- make a motion for judgment as a
> matter of law with respect to only the second prong of the excessive force
> claim; that is, that -- whether Officer Kelly, her conduct immediately
> preceding the use of deadly force.

I don't know the exact language in the jury instructions, Your Honor.

Her reckless -- immediately connected to the use of force has been -- created the need to use that force.

And the plaintiff would propose that even under the defendants' testimony, and taking their version of events, that the -- this case is analogous to Quezada versus County of Bernalillo, where not all the information relayed is that the person has a weapon, they're in a parking lot.  An officer is at the scene.  That officer is Deputy Martin.

I would propose to the Court that the information being processed in that case, in Quezada, to the officers, that the officer who actually used deadly force knew at the time -- was that the person was in a car, had been drinking, and that she was suicidal.

So that information -- or potentially could be suicidal. That's the information known.

And that the time when Officer Murphy arrives on the scene -- that's the third officer -- much like Officer Jara, that officer took a position of cover, as did the security officers in this case.

The only officer who left the position of cover, and even under Defendant Kelly's version of events, is that when she saw him with a knife she knew he could be dangerous. And that he yelled -- when she yelled and screamed, he turned in a way towards her, that she positioned herself in such a manner by moving away from her car in a manner in which she testified, that she had no choice but to use deadly force.

And that testimony appears to be confirmed by all the testimony we've heard about the number of police cars arriving on the scene, in addition to the fact that we're dealing with a gun and a car. The car was slowly maneuvering.

Mr. Barr was slowly walking. And the fact that when Mr. Barr stopped and turned and -- and -- slightly towards Officer Kelly when she heard him screaming, he raised the knife. And at that point, Defendant Kelly moved and put herself in a position where, even -- in that version of events, she would have had to have -- she would have had to have used deadly force.

*Id*. at 204-06.  The Court explained, "I think those -- the facts that would surround the meeting of the recklessness standard for that prong are significantly in dispute, so I'm going to deny that motion."  *Id*. at 206.

**B.    Instant Motion**

In the final paragraph of the instant motion, Plaintiff summarizes his argument

as follows:  "Viewed in the light most favorable to the Defense, the evidence presented

at trial clearly indicates that Defendant Kelly's choice to immediately shoot (an

immediate choice to use deadly force) Chandler Barr was not reasonably necessary for

the safety of Defendant Kelly, the other officers, or the nearby eyewitnesses."  *Doc. 297*

at 11.  To support this proposition, Plaintiff relies on three assertions he claims were

proven as a matter of law at trial: (1) that he made no verbal threats or physically

threatening gestures or movement toward Defendant Kelly; (2) that, at the time

Defendant Kelly shot him, he was at a significant distance from Defendant Kelly and

was greatly outmatched in both weaponry and manpower; and (3) that Defendant Kelly

elected to use lethal force against him almost immediately.  *Id*. at 4-9.[1]

**C.    Law Regarding Renewed Rule 50 Motions and Analysis**

Motions for judgment as a matter of law must "specify the judgment sought and

the law and the facts on which the moving party is entitled to the judgment."  FED. R.

CIV. P. 50(a)(2).  When such a motion is made before the case is submitted to the jury,

"no later than 28 days from the entry of judgment … the movant may file a renewed

motion for judgment as a matter of law[]."  FED. R. CIV. P. 50(b).  As should be clear

---

[1] Plaintiff's fourth section does not present an independent assertion, but argues simply that the Court should disregard the testimony of both officers to the extent that it contradicts the three previous assertions.  *Doc. 297* at 9-11.

from the language of the rule, the post-verdict motion is merely a **renewal** of the earlier

pre-verdict motion.  *See Trotter v. Todd*, 719 F.2d 346, 350 (10th Cir. 1983).  Consequently,

this post-trial motion "cannot assert new matters not presented in the motion" made at

the close of evidence.  *Anderson v. United Tel. Co. of Kansas*, 933 F.2d 1500, 1503 (10th

Cir.1991).  In other words, a "party may not circumvent Rule 50(a) by raising for the

first time in a post-trial motion issues not raised in an earlier motion for directed

verdict."  *United Intern. Holdings, Inc. v. Wharf Ltd.*, 210 F.3d 1207, 1228 (10th Cir. 2000)

(quotations and citations omitted).

A review of Plaintiff's pre-verdict Rule 50 motion reveals that Plaintiff sought

judgment as a matter of law only on the theory that the officer recklessly created the

need to use deadly force.  The most obvious evidence for this conclusion is counsel's

own description of the motion:

> The plaintiff has a motion to -- make a motion for judgment as a matter of
> law **with respect to only the second prong of the excessive force claim**;
> that is, that -- whether Officer Kelly, her conduct immediately preceding
> the use of deadly force.  I don't know the exact language in the jury
> instructions, Your Honor.  Her reckless -- immediately connected to the
> use of force has been -- created the need to use that force.

*Doc. 296* at 204 (emphasis added).  As explained in the jury instruction to which

Plaintiff's counsel was alluding, this theory of liability would be relevant only if

the force used was otherwise justified.  *Doc. 284* at 16-17 ("With one exception, an

officer may use deadly force against a person if a reasonable officer in the same

position would have had probable cause to believe that the person posed a threat

6

of serious physical harm to the officer or to others . . . .  The one exception you must consider is whether the officer's deliberate or reckless conduct immediately connected to the use of deadly force unreasonably created the need to use that force.  If you conclude that it did, then you may find the use of deadly force to be unreasonable, even if it would have been otherwise justified.").  In the pre-verdict motion, Plaintiff's core argument was that the officer "positioned herself in such a manner by moving away from her car in a manner in which she testified, that she had no choice but to use deadly force."  *Doc. 296* at 205.

Unlike his pre-verdict motion, Plaintiff's instant motion argues for judgment as a matter of law under the theory that the officer's use of deadly force was not "otherwise justified."  None of his primary assertions are focused on the officer's initial arrival, positioning, or other factors relevant to whether she recklessly created the need for the use of deadly force.  Instead, they are points meant to persuade the Court that deadly force was not in fact needed.  *See, e.g., doc. 297* at 7 ("At roughly twenty feet (most likely further) from Defendant Kelly, Chandler Barr was a substantial distance away, decreasing the need to immediately resort to lethal force.").

In his Reply, Plaintiff argues that he did not waive the right to "renew" the argument that "the evidence presented at trial could [not] properly support a finding that Chandler Barr posed a deadly threat to Defendant Kelly sufficient to justify the use of deadly force."  *Doc. 301* at 1.  Plaintiff correctly points out that "technical precision is

unnecessary." *Anderson v. United Telephone Co. of Kansas*, 933 F.2d 1500, 1503 (10th Cir. 1991). Indeed, "a directed verdict motion should not be reviewed narrowly but rather in light of the purpose of the rules to secure a just, speedy, and inexpensive determination of a case." *Id*. The inquiry properly focuses on whether the trial court is aware of the movant's position, and it is the moving party's burden to demonstrate such awareness. *Guidance Endodontics, LLC v. Dentsply Intern., Inc.*, 728 F. Supp. 2d. 1182 (D.N.M. 2010) (citing *First Sec. Bank of Beaver v. Taylor*, 964 F.2d 1053, 1056 (10th Cir. 1992) and *United States v. Fenix & Scisson, Inc.*, 360 F.2d 260, 266 (10th Cir. 1966)). Plaintiff fails to meet this burden.

First, as detailed above, counsel expressly stated that the motion was made "with respect to only the second prong of the excessive force claim; that is, that -- whether Officer Kelly, her conduct immediately preceding the use of deadly force." *Doc. 296* at 204. Given counsel's unequivocal and undoubtedly limiting language, it is difficult to see how the Court could have understood the motion to be anything other than what counsel described: that the motion pertained "only to the second prong of the excessive force claim."

Second, a review of the Court's ruling shows that it understood Plaintiff's motion to be based on only the reckless creation theory of liability. After counsel's argument, the Court ruled, "Well, I think those -- the facts that would surround the meeting of the recklessness standard for that prong are significantly in dispute, so I'm going to deny

8

that motion." *Doc. 296* at 206.  Notably, the Court made no mention of whether the use

of deadly force was otherwise justified.

Finally, contrary to Plaintiff's reply argument, a broader review of counsels'

arguments over directed verdict further demonstrates that Plaintiff's pre-verdict Rule

50 motion was based only on the reckless creation theory.  Plaintiff "contends that the

sufficiency of evidence concerning the threat Chandler Barr posed to Defendant Kelly

was central to all arguments made in support of Rule 50 motions during trial." *Doc. 301*

at 2.  Plaintiff then points to his arguments in opposition to Defendants' Rule 50

motions at the close of Plaintiff's case-in-chief and at the close of the record.  *Id*.

However, in the first of those arguments, on the issue of the threat posed by Plaintiff,

his counsel argued that:

> There is certainly plenty of disputed fact where a jury could find that Mr.
> Barr posed no credible threat, was not making an aggressive or hostile
> motion with the weapon he was carrying towards Defendant Kelly at the
> time that she decided to shoot him, and was not moving towards her in a
> rapid manner when she decided to shoot him.  If you look at the Larson
> factors, I think there's more than enough evidence for this to go to the
> jury.

*Doc. 295* at 342.  In response to Defendants' renewed motion, Plaintiff's counsel again

emphasized the existence of disputed facts relating to the matter:

> Your Honor, I rely on the arguments we made yesterday after close of
> evidence, and again with respect to the punitive damages instruction.
> There has been sufficient evidence to prove the case, certainly plenty of
> disputed facts as to whether Mr. Barr posed an actual threat or made any
> gesture at all with the knife towards Defendant Kelly.

*Doc. 296* at 202-03.  In both arguments, Plaintiff's counsel was stressing the existence of disputed facts on the issue of the *Graham* reasonableness inquiry.  Plaintiff's assertion that disputed facts precluded finding for Defendant as a matter of law on prong one completely rebuffs the already dubious proposition that, in his Rule 50 motion, he *sub silentio* was arguing that no disputed facts existed and he was entitled to judgment as a matter of law.

### D.     Conclusion

Plaintiff's pre-verdict Rule 50 motion was based only on the theory that the officer recklessly created the need for deadly force.  Whereas Plaintiff could have renewed his motion based on the reckless creation theory, he did not.  He failed to argue or point to evidence in the record which would establish that, as a matter of law, the officer's deliberate or reckless conduct immediately connected to the use of deadly force unreasonably created the need to use deadly force.  Therefore, the Court cannot grant relief on that theory.  *See* FED. R. CIV. P. 7(b)(1)(B).

Instead, Plaintiff now seeks judgment as a matter of law based on the theory that deadly force was not needed or reasonable.  This theory is materially different from the reckless creation theory.  Because one cannot assert new matters not presented in the motion made at the close of evidence, this theory cannot be presented in a Rule 50(b) motion.  Thus, the Rule 50(b) motion must be denied.

### E.      Alternative Ruling

Even assuming Plaintiff's instant motion properly raised both theories of liability
– (i) deadly force was not needed, and (ii) the officer recklessly created the need for that
force – Plaintiff would not be entitled to judgment as a matter of law pursuant to either
theory.

Judgment as a matter of law is appropriate only if "the court finds that a
reasonable jury would not have a legally sufficient evidentiary basis to find for the
party on that issue." FED. R. CIV. P. 50(a)(1).  When considering a Rule 50 motion, the
court must "review all the evidence in the record, construing it and all inferences drawn
therefrom most favorably to the nonmoving party, and refrain from making credibility
determinations or weighing the evidence." *Guies, Ltd. v. Yarmouth Group Prop. Mgmt.*,
295 F.3d 1065, 1073 (10th Cir. 2002).  "Moreover, if there is conflicting or insufficient
evidence to warrant a 'one-way conclusion,' a directed verdict or judgment n.o.v. is
inappropriate.  Generally, a directed verdict or a motion for a judgment n.o.v. 'should
be cautiously and sparingly granted.'" *Zuchel v. City and Cnty. of Denver, Colo.*, 997 F.2d
730, 734 (10th Cir. 1993) (citations omitted).The jury verdicts against Plaintiff on all
claims, which demonstrate that the jurors found no liability under either theory, were
supported by sufficient evidence to avoid judgment as a matter of law.  Plaintiff's
arguments to the contrary would require the impermissible weighing of credibility of

witnesses.  As such, the Court would have rejected even a properly renewed Rule 50

motion under either theory.

## II.   ALTERNATIVE MOTION FOR NEW TRIAL

The Court now turns to Plaintiff's alternative request for a new trial pursuant to

Rule 59.  Plaintiff contends that he should receive a new trial due to "several erroneous

evidentiary rulings, which allowed for irrelevant and prejudicial evidence to be

submitted to the jury."  *Doc. 297* at 12.  Specifically, Plaintiff complains of the admission

of (i) his homicidal ideations expressed approximately one month before the shooting,

and (ii) his statements after the shooting that he had "charged" the officer.  *Id.* at 12-14.

### A.     Standard for New Trial

A Rule 59 motion for new trial can be granted on any error so long as "the

district court concludes the 'claimed error substantially and adversely' affected the

party's rights."  *Henning v. Union Pac. R. Co*., 530 1206, 1217 (10th Cir. 2008) (quoting

*Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1297 (10th Cir. 1998)).  The party asserting the error

bears the burden of showing clear error and prejudice to substantial rights.  *See*

*Guidance Endodontics, LLC v. Dentsply Intern., Inc.*, 749 F. Supp. 2d. 1235, 1256 (D.N.M.

2010) (citing *Blanke v. Alexander*, 152 F.3d 1224, 1236 (10th Cir. 1998)); *see also Sibley v.*

*Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (quotation and citation omitted); *Tompkin v.*

*Philip Morris USA, Inc.*, 362 F.3d 882, 891 (6th Cir. 2004) (quotation and citation omitted).

"An alleged error by the trial court constitutes grounds for granting a new trial only

where the trial court concludes that, absent the alleged error, a jury would have likely reached a contrary result." *Richins v. Deere & Co.*, 231 F.R.D. 623, 625 (D.N.M. 2004) (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)).

### B.     Waiver of Evidentiary Objections

 In pre-trial motions in limine, Plaintiff had moved to prohibit Defendants from introducing evidence of the expressions of homicidal ideation and the "charging" statements. *See doc. 201*. After hearing from the parties, the Court denied Plaintiff's motions *in limine*, ruling that the evidence was admissible. *Doc. 277* at 20-22. At trial, rather than wait to see if Defendants would indeed present the evidence, Plaintiff "in an attempt to mitigate the prejudicial effect of the Defense's anticipated questioning," introduced both categories of evidence in his case-in-chief. *See doc. 297* at 14 n. 5; *see also doc. 294* at 68:8-22; 75:4-6; 82:17-19; 83:25; 94:7-21; 97:20-22; 99:11-13, 149:17-150:18 and *doc. 288*, Ex. 63. Relying on the Supreme Court's decision in *Ohler v. United States*, 529 U.S. 753 (2000), Defendants argue that, by doing so, Plaintiff waived his right to contest the Court's motion *in limine* rulings.

In *Ohler*, the criminal defendant faced charges of drug trafficking. *Id*. at 754-55. The government filed motions *in limine* seeking a pre-trial ruling that it could introduce evidence of the defendant's prior felony conviction for possession of methamphetamine. *Id*. at 755. The trial court denied the motion to admit the conviction as character evidence under Federal Rule of Evidence 404(b), but ruled that, if the

defendant testified, evidence of the conviction would be admissible as impeachment evidence under Rule 609(a)(1). *Id*. The defendant testified in her own defense and, on direct examination, admitted to the felony conviction. *Id*. On appeal, the defendant challenged the trial court's *in limine* ruling. *Id*. The Supreme Court considered whether, by introducing the conviction herself, the defendant waived her right to do so.

The Supreme Court began with the broad proposition that "[g]enerally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted." *Id*. (citing 1 J. Strong, McCormick on Evidence § 55, p. 246 (5th ed. 1999) ("If a party who has objected to evidence of a certain fact himself produces evidence from his own witness of the same fact, he has waived his objection")). The Court then rejected each attempt by the defendant "to avoid the consequences of this well-established commonsense principle…." *Id*. at 755-56. In the end, the Court held that a defendant who preemptively introduces evidence of a prior conviction may not argue on appeal that the *in limine* ruling permitting its introduction by the opposing party was error. *Id*. at 760.

The broad proposition from which the *Ohler* holding flows would seem to bar Plaintiff's claim of evidentiary error now. While this Court did issue an *in limine* ruling, over the objection of Plaintiff, that the two categories of evidence could be admitted by Defendants, Plaintiff preemptively introduced the evidence himself. Having done so, he "cannot complain … that the evidence was erroneously admitted." *Id*. at 755.

14

However, Plaintiff attempts to distinguish *Ohler* and avoid this consequence on several

bases.

First, Plaintiff repeatedly emphasizes that *Ohler* was a criminal case.  While true,

Plaintiff does not explain why its rationale is inapplicable to a civil case.  As explained

by the Court of Appeals for the Seventh Circuit,

> The logic of *Ohler* applies with equal force in both criminal and civil cases.
> The tactical nature of each party's decisions is the same; indeed, the stakes
> are higher in a criminal case, and still the Supreme Court found waiver.
> We note that every circuit to have addressed the question has applied
> *Ohler* in civil cases. *See, e.g., Bowoto v. Chevron Corp.*, 621 F.3d 1116, 1130
> (9th Cir. 2010); *Estate of Smith v. City of Wilmington*, 317 Fed.Appx. 237, 239
> n. 1 (3d Cir. 2009); *Canny v. Dr. Pepper/Seven–Up Bottling Grp., Inc.*, 439
> F.3d 894, 904 (8th Cir. 2006); *Ludwig v. Norfolk So. Ry. Co.*, 50 Fed.Appx.
> 743, 751 (6th Cir. 2002).

*Clarett v. Roberts*, 657 F.3d 664, 670-71 (7th Cir. 2011); *see also Blessey Marine Services, Inc.*

*v. Jeffboat, L.L.C.*, 771 F.3d 894, 899-900 (5th Cir. 2014).  This Court agrees that the

doctrine of waiver as described in *Ohler* applies to civil cases.

Second, Plaintiff argues that *Ohler* waiver should only occur where the evidence

was admitted for impeachment purposes.  Given that the Court had ruled that the

disputed evidence here could be admitted substantively, Plaintiff argues that the waiver

rule is inapplicable.  In support of the idea that this distinction is determinative,

Plaintiff cites an unpublished Colorado Court of Appeals decision.  *See Haralampopoulos*

*ex rel. Haralampopoulos v. Kelly*, No. 10-0668, 2011 WL 4908743, at \*4 (Colo. App. 2011)

*rev'd on other grounds sub nom. by Kelly v. Haralampopoulos by Haralampopoulos*, 327 P.3d

15

255 (Colo. 2014).  For its part, the Colorado Court of Appeals did not elaborate on the

importance of this distinction beyond a citation to a law review article.  *Id*. at *4 (citing

L. Timothy Perrin, *Pricking Boils, Preserving Error: On the Horns of a Dilemma After Ohler

v. United States*, 34 U.C. Davis L. Rev. 615, 670 (2001)).

Unfortunately, the logic of that article does not support Plaintiff's attempt to

avoid waiver.  The author explained that *Ohler* would not ordinarily impact criminal

defendants when substantive evidence was involved because the government – who

goes first in a criminal trial – would have already introduced the contested substantive

evidence in its case-in-chief.  Perrin, *supra*, at 657.  Therefore, the criminal defendant

would not be forced to choose whether or not to act preemptively by introducing the

evidence first.  The author then argues that, once the government introduces the

contested evidence, the mere fact that a defendant voluntarily addressed the evidence

should not constitute waiver.  *Id*. at 657-58.  The author next considered the

circumstance of contested substantive evidence introduced by the government in

rebuttal.

> In that scenario, should the party who attempted to exclude the evidence
> be able to make the preemptive disclosure in hopes of gaining a tactical
> advantage and avoiding the impression that the party had concealed the
> past conduct or events without waiving error? Ohler's concern with
> preserving the inherent advantage given at trial to the party who gets to
> go last suggests that disclosure in this situation would fall under Ohler
> and would result in waiver.  Moreover, the disclosing party is, under
> Ohler's analysis, "voluntarily" disclosing the evidence such that the party
> cannot later complain about its admission.

16

*Id.* at 658.  Thus, the argument that non-impeachment evidence is not impacted by *Ohler* is not based on some fundamental distinction that would make waiver inappropriate. Instead, it is based on the practical observation that, in a criminal case, non-impeachment evidence generally cannot be pre-empted by the criminal defendant.  In fact, the author of this argument concedes that, when a criminal defendant has and takes the opportunity to preemptively introduce non-impeachment evidence he had previously attempted to exclude, an *Ohler* waiver would occur.  Seeing no reason that non-impeachment evidence should be excluded for the doctrine of waiver as described in *Ohler*, the Court rejects this distinction as a reason to avoid waiver here.  *See, e.g.*, *Blessey Marine Servs.*, 771 F.3d at 900 (finding *Ohler* waiver as to non-impeachment evidence in civil case); *Bowoto*, 621 F.3d at 1130 (same); *Ludwig*, 50 F. App'x at 750-51 (same); *Estate of Smith*, 317 F. App'x at 239 n.1 (noting *Ohler* waiver applicability to non-impeachment evidence in civil case).

Finally, Plaintiff seizes on the statement in *Ohler* that the "possible harm flowing from a district court's *in limine* ruling permitting impeachment by a prior conviction is wholly speculative."  *Ohler*, 529 U.S. at 759 (quoting *Luce v. United States*, 469 U.S. 38, 41 (1984)).  From this, he contends that the "crux of the *Ohler* opinion is that, in a criminal case, it is highly speculative whether the Government would ultimately choose to use a prior conviction as impeachment evidence should the defendant testify…."  Plaintiff argues that *Ohler* waiver does not apply here because "it was clear from the pretrial

17

litigation of these issues that the Defense planned to showcase Chandler's homicidal statements as substantive evidence at trial." *Doc. 301* at 9.  In other words, Plaintiff believes that the odds that the party seeking to introduce the evidence will proceed with the introduction of the evidence is crucial to *Ohler* waiver analysis.  This Court disagrees.  The significance of the speculative nature of the harm was not primarily based on the Supreme Court's estimation of the likelihood that the original proffering party would actually introduce the evidence.  Instead, it was based on its recognition of that party's right to decide whether or not to do so.  Moreover, accepting Plaintiff's argument would create an exception that swallows the rule.  In almost every case in which a party files a motion *in limine* seeking a pre-trial ruling that a piece of evidence is admissible, one can reasonably argue that the party strongly intends to introduce that evidence.  Nonetheless, until the party does so, it still can decide against presenting the evidence – and until the decision is made, any harm from the *in limine* ruling is speculative.  Therefore, the Court rejects Plaintiff's argument that the strong likelihood that Defendants would introduce the disputed evidence is a basis for avoiding *Ohler* waiver here.

To summarize, Plaintiff complains of two categories of evidence being admitted after the Court made pre-trial rulings permitting their admission over Plaintiff's objections.  However, for tactical reasons, Plaintiff decided to introduce the contested evidence himself.  While understandable, that decision means he waives his right to

complain that the evidence was erroneously admitted.  As such, those alleged errors cannot serve as the basis for a new trial and the Court will deny Plaintiff's Alternative Motion for New Trial on that basis.

### C.    Alternative Ruling

Even if Plaintiff did not waive his evidentiary objections by preemptive admission, the Court would deny his motion for new trial because he has not established error or prejudice as to either category of evidence.

### 1.    *Statements by Plaintiff that he charged the officer*

Plaintiff contests the admission of two occasions when he stated that he "charged" the officer prior to being shot.  *Doc. 297* at 14.  The basis of Plaintiff's objection to this evidence is unclear at best.  Nonetheless, the admissibility of the statements is beyond question.  Plaintiff was a witness to the events leading up to the shooting.[2]  In those two statements, Plaintiff described the manner in which he approached the officer as "charging."  His manner of approach was undeniably relevant to her use of deadly force.  Consequently, his statements were relevant under Federal Rule of Evidence 401.[3]

---

[2] Plaintiff argues that, because his description of his manner of approach did not match up with the other witnesses' descriptions, his statements should not be admitted.  While the premise of this argument is highly suspect, the Court also finds that the "charging" description was arguably consistent with some of the testimony from other witnesses.

[3] At times, Plaintiff appears to argue that they are not relevant because the officers didn't know about the statements prior to the shooting.  This argument is meritless.  Under this theory, none of the statements of the other witnesses to the shooting would be admissible.

Because the "charging" statements were made by a party opponent, they are not

hearsay even where, as here, they are introduced to prove the truth of the matter

asserted.  *See* FED. R. EVID. 801(d)(2).

The only refuge remaining to Plaintiff is Federal Rule of Evidence 403.  Under

that rule, the "court may exclude relevant evidence if it is **substantially outweighed** by

a danger of one or more of the following: unfair prejudice, confusing the issues,

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

evidence."  Fed. R. Evid. 403 (emphasis added).  The Court finds that Plaintiff falls far

short of meeting this standard as to the "charging" statements.

2.    *Statement of Homicidal Ideation*

Roughly one month before the shooting, Plaintiff was admitted to a hospital in

Oklahoma.  *Doc. 294* at 97-98.  During the admission process, he told hospital personnel

that he was homicidal.  *Id*.  Plaintiff, as he did in the pre-trial motions and hearings,

argues that this statement should have been excluded.  Plaintiff argues that the

statement is both irrelevant under Rule 401 and inadmissible under Rule 403.  Plaintiff's

arguments are essentially the same as those he previously urged.

A key issue in the case was whether Plaintiff was moving toward Defendant

Kelly in an aggressive manner when she shot him.  It is Defendants' theory that Plaintiff

was in fact performing an aggressive homicidal act toward Defendant Kelly when he

was shot.  Statements which reveal the "future intent of the declarant to perform an act

[are admissible] if the occurrence of that act is at issue." *United States v. Freeman*, 514

F.2d 1184, 1190 (10th Cir. 1975). As Plaintiff noted in his instant motion, *Freeman*

involved an analysis of a hearsay exception. *Doc. 297* at 22 n.7. While the disputed

evidence here need not fit within that exception because it was a statement by a party

opponent (*see* FED. R. EVID. 801(d)(2)), *Freeman* demonstrates that statements of future

intent are relevant (*see* FED. R. EVID. 401) in the circumstance described.

Of course, the Court recognized the decision was a close call on the basis of an

analysis under Rule 403. The statement was not made particularly close in time and

Plaintiff did not state that his homicidal intentions were directed at police officers.

Nonetheless, the Court concluded, and still concludes, that the probative value[4] of the

evidence was not substantially outweighed by the danger of unfair prejudice.

Finally, even assuming this ruling was in error, Plaintiff fails to demonstrate the

prejudice necessary to justify granting a new trial. First, the entire presentation of

evidence by Defendants about Plaintiff's statement regarding homicidal intentions

---

[4] As an aside, Plaintiff complains that the Court did not craft a limiting instruction regarding the homicidal intention statement. *See doc. 297* at 25-26. However, despite being given repeated opportunities to present proposed jury instructions, Plaintiff's counsel presented no such instruction on this issue. Nor did counsel ever object to its omission in the Court's various sets of proposed jury instructions orally or in writing. *See docs. 263, 271, 282, 284*; *see also doc. 293* at 183:17-186:12; *doc. 294* at 231:8-231:15, 304:14-305:5; *doc. 295* at 144:24-156:5. Recognizing this failure, Plaintiff claims he "was unable to craft such instructions, as it was unclear for what specific purposes the information came in…." *Doc. 297* at 26 n.8. Regarding the homicidal statement, however, the Court was quite clear on the purpose for which it was being admitted. *See doc. 277* at 20-21. As such, Plaintiff's argument based on the lack of a limiting instruction is waived.

consisted of three questions.  *See doc. 294* at 124:10-21.[5]  Moreover, the Court recalls no mention of the statement, and Plaintiff cites to none, in Defendants' closing argument. In a full-week trial, it is difficult to imagine that, without those three questions, the result would have been different.

Second, through his answers on direct examination, Plaintiff permitted the discussion of a far more prejudicial fact than the statement permitted by the Court's pre-trial ruling.  On direct examination, counsel asked Plaintiff: "During your life, have you ever tried to kill anybody?"  *Doc. 294* at 99:11-12.  Plaintiff answered, "No, never." Prior to cross-examination, Defendants' counsel approached to advise the Court of a question she now intended to ask to impeach that answer.  *Doc. 294* at 111:10-123:15. After the bench conference, the Court permitted Defendants' counsel to question Plaintiff about the fact that, in July 2012, he had reported hearing voices to kill his roommate and nearly strangled him with bedsheets.  *See doc. 294* at 124:22-127:3. Although Plaintiff denied these allegations, the prejudicial effect of questions about strangling a roommate far outshadowed any prejudice caused by three short questions regarding his homicidal statement.  Given that Plaintiff opened the door to these more damaging inquiries, he cannot now establish result-changing prejudice arising from the Court's *in limine* ruling regarding the homicidal intention statement.

---

[5] This calculation does not include the three questions asked by Plaintiff's counsel on direct examination. *See doc. 294* at 97:20-98:4.

      *3.*     *Conclusion*

Plaintiff has failed to demonstrate clear error as to either evidentiary ruling he now challenges.  Moreover, even assuming error, he has failed to demonstrate sufficient prejudice to justify a new trial.  Thus, in the alternative, the Court will deny Plaintiff's Alternative Motion for New Trial on these bases.

**III.**   **RULING**

For the reasons stated above, Plaintiff Chandler Barr's Renewed Motion for Judgment as a Matter of Law and Alternative Request for New Trial (*doc. 297*) is DENIED.

IT IS SO ORDERED.

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**